**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael Joseph HERSHBERGER,**
**Defendant–Appellant.**

**No. 91–8017.**

United States Court of Appeals,
Tenth Circuit.

Feb. 11, 1992.

John R. Barksdale, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., District of Wyoming, with him on the brief), Casper, Wyo., for plaintiff-appellee.

James H. Barrett, Cheyenne, Wyo., for defendant-appellant.

Before McKAY, Chief Judge, and BALDOCK and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Michael Joseph Hershberger was charged in a two-count indictment as follows: In count one he was charged with knowingly, intentionally and unlawfully possessing Ephedrine, a precursor chemical as defined by 21 U.S.C. § 802(34), on or about May 25, 1989, with an intent to manufacture Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(d)(1). In count two he was charged with knowingly, intentionally and unlawfully attempting to manufacture in excess of ten grams of Methamphetamine, a Schedule II controlled substance, on or about May 25, 1989, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(B). A jury convicted Hershberger on count one and acquitted him on count two. He was sentenced to 120 months imprisonment, to be followed by 3 years of supervised release and a $50 assessment. Hershberger appeals. We affirm.

On appeal, Hershberger contends that the evidence does not support the jury's verdict finding him guilty on count one. He also contends that in computing his base offense level under the Sentencing Guidelines, the district court erred in including as "relevant conduct" a January 1989 delivery of five pounds of Ephedrine and that the district court further erred in increasing his base offense level by two levels for his "obstruction of justice." Some background facts are in order.

As indicated, count one, and count two for that matter, pertain to acts occurring on or about May 25, 1989. On that day officers of the Green River, Wyoming Police Department conducted two searches of a private residence located at 280 Greasewood in Green River, Wyoming, the home of Michael Hershberger. Hershberger had permitted a Mr. James Engh to live in the house while he was in California, although, by coincidence or otherwise, Hershberger was in Green River on May 25, 1989. He had brought with him from California one Tracy Van Hook Surles, who was in his Green River residence at the time of the search.

The first search of the premises occurred on May 25, 1989, around 9:20 a.m. when Green River police officers executed a search warrant authorizing a search for stolen property. During the course of that search the officers discovered what appeared to be an illegal drug manufacturing laboratory in the basement of the residence. The officers left the house and obtained a second search warrant authorizing a search for illegal drugs and related paraphernalia. Agents of the Wyoming Division of Criminal Investigation assisted in this second search, in which certain chemicals, glassware and other items evidencing an illegal Methamphetamine laboratory were seized. There was testimony that Hershberger's fingerprints were on certain of these items. A forensic chemist testified that there were traces of Ephedrine in many of the items seized in the search.

 Engh, who, as indicated, was staying on the property at 280 Greasewood with Hershberger's permission, and one Cindy Cross, a former girlfriend of Hershberger's, both testified as government witnesses. They testified that in January, 1989, they met Hershberger in Salt Lake City, Utah, where Hershberger unsuccessfully attempted to purchase five pounds of Ephedrine from a local chemical shop.[1] Hershberger, using the name John Nixon, then called Sun Scientific on an 800 number in Florida and placed an order for five pounds of Ephedrine to be shipped by UPS to 280 Greasewood in Green River.

A working partner of Sun Scientific testified that five pounds of Ephedrine was shipped via UPS to 280 Greasewood, and UPS records confirmed the delivery. Cindy Cross testified that when the delivery was made at 280 Greasewood in late January, 1989, she, using the name Cindy Wilson, signed for it and paid the UPS driver $1,000 in cash which she had received from Hershberger.

Records of Sun Scientific also showed a delivery of five pounds of Ephedrine on or about May 15, 1989, to 1312 Clark Street, Rock Springs, Wyoming. This was the residence of Cindy Cross's mother. On May 17, 1989, Cindy Cross, accompanied by Hershberger, went to her mother's residence and signed for the five pounds of Ephedrine, again giving the UPS driver $1,000 in cash which she had received from Hershberger. Cross also testified that from January through May, 1989, she often used Methamphetamine with Hershberger and Engh at 280 Greasewood. In this regard, Engh corroborated Cross's testimony.

Bruce Gandy, another government witness, testified that in the late evening of May 25, 1989, or perhaps in the early morning of May 26, 1989, he drove Hershberger to 280 Greasewood, Hershberger indicating that he wanted to pick up some personal belongings at his home before leaving Green River.[2] On that occasion, according to Gandy, Hershberger retrieved a nylon bag which had been buried in the backyard of the premises at 280 Greasewood. The bag was later opened and contained a white

---

1. Cindy Cross, at Hershberger's direction, went into the chemical shop to purchase the Ephedrine with currency given her by Hershberger. The transaction, however, was not consummated because she was asked for her ID, which she refused to give.

2. Hershberger did in fact leave Green River on May 26, 1989, and he was not arrested until February 27, 1990.

crystalline powder, which Hershberger told Gandy was Ephedrine.

We think the testimony of witnesses Engh, Cross and Gandy, coupled with the testimony of the representative from Sun Scientific, is itself sufficient to support the jury's verdict. The government, however, produced much more incriminating evidence. The prosecution called some sixteen witnesses and introduced into evidence literally scores of corroborating documents.[3] In sum, the record amply supports the jury's determination that on or about May 25, 1989, Hershberger possessed Ephedrine with an intent to manufacture Methamphetamine.

■■■ As indicated, Hershberger was sentenced pursuant to the Sentencing Guidelines. In determining Hershberger's base offense level, the district court factored in the five-pound delivery of Ephedrine in May, 1989. Apparently, there is no objection to that. However, the district court, under Sentencing Guideline § 1B1.3, also factored into Hershberger's base offense level the January 1989 delivery as being "relevant conduct" to the offense charged. In *United States v. Ross*, 920 F.2d 1530, 1538 (10th Cir.1990), we held that "[i]n determining the base offense level for a drug offense under the Sentencing Guidelines, the sentencing judge is directed to aggregate the quantities of drugs 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" Counsel objected to such inclusion on the grounds that the government had failed to prove that in fact there was any delivery in January, 1989. The standard for "sentencing evidence" is a preponderance of the evidence. *United States v. Boyd*, 901 F.2d 842, 845 (10th Cir.1990), and as indicated, the testimony of witnesses Engh and Cross, coupled with the testimony of the representative of Sun Scientific, is sufficient to show a January 1989 delivery of Ephedrine.[4]

■■■ In the presentence report the probation officer recommended a 2-level enhancement of Hershberger's base offense level because of his obstruction of justice. In line therewith, the district court increased Hershberger's base offense level by 2 levels, as permitted by Sentencing Guideline § 3C1.1. We review the enhancement of a sentence for obstruction of justice under the clearly erroneous standard. *United States v. McCann*, 940 F.2d 1352 (10th Cir.1991). At trial several witnesses testified that Hershberger had threatened to harm them if they testified against him or if they otherwise cooperated with the authorities in their investigation of Hershberger. At the sentencing hearing, Hershberger denied making any threats. His denial, however, did not resolve the matter. The fact remains that several government witnesses did testify that Hershberger had made threats to them. Threatening a witness either before the witness testifies and prior to conviction or sentencing, or after the witness testifies, but prior to sentencing, is clearly within the scope of Sentencing Guideline § 3C1.1. *United States v. Reid*, 911 F.2d 1456, 1463 n. 6 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). The district court's increase of the base offense by two levels for obstruction of justice was not clearly erroneous.

Judgment affirmed.

---

**3.** Although Hershberger did not testify at trial, he did call five witnesses.

**4.** There was some testimony indicating a five-pound delivery of Ephedrine from Sun Scientific in April, 1989. However, the district court did not increase Hershberger's base offense level for that delivery, if indeed there was any delivery in that month.