**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James W. SNYDER, Defendant–
Appellant.**

**No. 98–2574.**

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1999.

Decided Sept. 2, 1999.

Philip Benson (argued), Office of the United States Attorney, Dyer, IN; Virginia M. Kendall, Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Jeffrey J. Levine (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and BAUER, and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

James W. Snyder was convicted of producing, receiving, and distributing child pornography, as well as possessing child pornography with intent to sell. On appeal, he argues that: (1) the district court should have granted his request for a psychological examination to determine the competency of the victim; (2) the district court should not have given the jury a supplemental instruction that included "trade" in the definition of "sale"; (3) the district court should have dismissed two counts in the indictment for multiplicity; (4) the district court should have allowed the defense to give its own example of circumstantial evidence during its closing argument; and (5) the district court should not have applied obstruction of justice and vulnerable victim sentence enhancements. Because we find that none of these arguments have merit, we affirm the district court's judgment in all respects.

## I. BACKGROUND

On Friday, October 11, 1996, an eleven-year-old boy who we will call Michael Doe ("Doe") accepted an invitation to sleep over at his friend Ducky's house. That evening, John Lock, who was Ducky's sister's boyfriend, gave Doe marijuana and Mountain Dew mixed with beer. Doe fell asleep in a bedroom while Ducky fell asleep in the living room. Lock spent the night engaging in various sexual acts with Doe.

The following morning, Doe told Lock that he had to leave to do his Saturday paper route. Lock offered to deliver the papers and told Doe to get into his car. Once in the car, Doe fell asleep. When he woke up, he realized that Lock had taken him from Indiana to Chicago. After they checked into a hotel, Lock phoned Snyder and then took a shower with Doe. After Snyder arrived at the hotel, the three went to Snyder's house at 1518 Plainfield Road in LaGrange, Illinois.

Once at Snyder's house, Doe was given marijuana, alcohol, and "poppers," a muscle relaxant used to enhance sexual pleasure. Snyder then showed Doe pornographic videos, as well as pictures of naked children that had been downloaded from America Online. Eventually, either Lock or Snyder asked Doe to remove his clothes. While Lock took a nap, Snyder engaged in oral and anal sexual acts with Doe. Later that day, Lock engaged in oral and anal sexual acts with Doe while Snyder photographed the two with a camera that was hooked up to his computer. In the evening, Snyder again had oral sex with Doe. According to Doe, Snyder also showed him several pistols and rifles and threatened to kill him if he told anyone what they had been doing. Sometime during the course of the weekend, Snyder asked Doe when it was that Doe first had sex with a boy. Doe told Snyder that he had been raped when he was eight years old. On Sunday, Lock and Doe left for Indiana. Snyder kept Doe's underwear.

Almost as soon as Doe got home, he was interviewed by FBI agents who had been contacted earlier by his parents. Doe was able to describe the landmarks he had seen in sufficient detail to enable the

agents to locate Snyder's house and obtain a search warrant. As the agents approached the house to execute the warrant, they observed Snyder through the window typing at his computer. Snyder later admitted that he had been told that the FBI was looking for him. Upon executing the search warrant, FBI agents recovered a computer, a computer camera, several rifles, two pistols, and numerous computer discs. They also retrieved Doe's underwear. After being taken into custody, Snyder admitted that he had watched Lock engage in anal sex with Doe, but claimed that he had told Lock not to hurt Doe. Snyder also claimed that it was Lock who had projected the pornographic images of Doe over the Internet.

The computer-related evidence seized from Snyder's house was analyzed by the FBI crime lab in Washington, D.C. Mary Horvath, an analyst at the lab, verified that Snyder's computer was capable of downloading and uploading images from the Internet, and that it could be hooked up to a camera. Horvath also recovered several pornographic images from the computer, even though they had been deleted. In addition, by tracking Snyder's activities on America Online, Horvath was able to determine that Snyder had multiple user accounts (including one named "Boy Doer"), that Snyder had received at least one pornographic image from America Online on Sunday, October 13, 1996 at 1:54 p.m., and that Snyder's collection of pornographic pictures had been downloaded from America Online over a period of eight or nine months. The America Online records also showed activity that suggested that pornographic images of Doe had been produced while Snyder was online. Finally, an examination of Snyder's incoming e-mail revealed a message entitled "for my trading buds," to which a pornographic image file was attached.

On January 31, 1997, a federal grand jury returned a six-count indictment against Snyder. The district court subsequently dismissed counts 5 and 6, but declined to dismiss counts 3 and 4. Counts 1 through 4 charged Snyder with producing child pornography, in violation of 18 U.S.C. § 2251(a)(2), receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2), distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2), and possessing child pornography with intent to sell, in violation of 18 U.S.C. § 2252(a)(3)(B). Each count also charged Snyder with aiding and abetting under 18 U.S.C. § 2.

Before the trial began, Snyder requested that Doe be given a psychological examination to determine his competence to testify. In support of this request, Snyder claimed that Doe was unable to differentiate between reality and fantasy, as evidenced by Doe's unfounded statements that Lock had taken him to the Museum of Science and Industry and had beaten up a biker using karate. Snyder also asserted, on information and belief, that Doe was taking anti-depressant drugs that could affect his competency. The district court declined to order the examination.

On September 22, 1997, Snyder proceeded to trial. In the district judge's opening remarks to the jury, he defined circumstantial evidence and illustrated the concept by explaining that the existence of snow on the ground in the morning is circumstantial evidence that it snowed during the night. The defense did not object. During closing arguments, however, Snyder's attorney attempted to provide his own example of circumstantial evidence in order to illustrate that it can be unreliable. The government objected, and the district judge sustained the objection. The judge subsequently used Seventh Circuit Pattern Jury Instruction No. 3.02 to instruct the jury about circumstantial evidence. Again, the defense did not object.

Circumstantial evidence played an important role at trial because the jury was presented with conflicting testimony. For example, Doe testified that Snyder had shown him rifles and pistols and threatened him not to tell anyone about the weekend, that Lock had taken him to the

Museum of Science and Industry, and that Lock had been in a fight with a biker. Lock, who was a cooperating witness for the government, denied that Snyder had threatened Doe, and denied that he had taken Doe to the Museum of Science and Industry or been in a fight. Lock explained that he had promised to take Doe to the Museum of Science and Industry, and that he kept numerous karate posters and uniforms in his room, but that neither the trip to the museum nor the fight had actually taken place. Vince Blazina, Snyder's "marriage partner," testified that Snyder was afraid of guns and never touched them.

After the jury began deliberating, it sent the judge a note asking whether trading is considered selling. Although the judge initially resolved to direct the jurors to rely on their common sense and on the instructions that they had already been given, he ultimately provided the jury with a dictionary definition of the term "sale" that included the term "trade."

On September 29, 1997, the jury convicted Snyder on all four counts. On June 11, 1998, the district court sentenced Snyder to 168 months of imprisonment and six years of supervised release. This sentence included an obstruction of justice enhancement and a vulnerable victim enhancement. Snyder appeals his conviction and sentence.

## II. Discussion

### A. Competency Examination

■ Children are presumed to be competent to testify. 18 U.S.C. § 3509(c)(2). Accordingly, a "competency examination regarding a child may be conducted only if the court determines, on the record, that compelling reasons exist," 18 U.S.C. § 3509(c)(4), and "only upon written motion and offer of proof of incompetency by a party," 18 U.S.C. § 3509(c)(3). Furthermore, "[p]sychological and psychiatric examinations to assess the competency of a child witness shall not be ordered

without a showing of compelling need." 18 U.S.C. § 3509(c)(9). As long as a witness has the capacity to testify truthfully, it is best left to the fact-finder to determine whether he in fact did so. *See* Fed. R.Evid. 601, Advisory Notes (noting that unless witness is wholly without capacity, the question is one of credibility and weight); *United States v. Zizzo*, 120 F.3d 1338, 1347 (7th Cir.1997), *cert. denied, Marcello v. United States*, ─── U.S. ───, 118 S.Ct. 566, 139 L.Ed.2d 406 (1997) ("Rather than rendering him incompetent to testify without some sort of psychiatric examination, [a witness'] penchant for perjury simply provide[s] the defense with an ample opportunity to undermine [the witness'] credibility on cross-examination."). The district court held that Snyder had shown neither a compelling reason to hold a hearing, nor a compelling need to order a psychological evaluation. We review for abuse of discretion. *See id.* at 1347 ("Whether a witness should be forced to endure a psychiatric examination before being allowed to testify is a matter best left to the discretion of the district court.").

■ Snyder's motion for a psychological examination stated simply that Doe's prior statements demonstrated that he could not differentiate between truth and fantasy, and that "[u]pon information and belief," Doe was being treated with anti-depressants that "can have extreme side effects on individuals which could make the witness incompetent to testify at trial." These assertions, even if true, did not establish a compelling reason or need for a competency examination. First, the fact that some of Doe's statements were unfounded does not show that he was unable to differentiate between reality and fantasy. Second, Snyder stated only that Doe was taking medication that could render him incompetent to testify; he did not assert that the medication had in fact made Doe incompetent. Finally, the reliability of Doe's testimony was predictably (and effectively) called into question on cross examination, when Snyder's attorney

elicited detailed descriptions of imaginary events from Doe. Under these circumstances, the district court was safely within its discretion when it refused to order a psychological evaluation of Doe. Indeed, we have found no abuse of discretion in situations where the competency of a witness was much more questionable. *See e.g. United States v. Gutman*, 725 F.2d 417, 420 (7th Cir.1984) (witness had "bouts of serious mental illness in the year before the trial").

**B. Supplemental Instruction Defining "Sale"**

██ Snyder next contests the district court's supplemental instruction defining "sale" to include "trade". We review a trial court's choice of supplemental instruction for abuse of discretion. *United States v. Rios–Calderon*, 80 F.3d 194, 197 (7th Cir.1996) (The necessity, extent, and character of any supplemental instructions to the jury are matters within the discretion of the trial court.).

██ In reviewing a supplemental instruction, we consider: (1) whether the instructions as a whole fairly and adequately treat the issue; (2) whether the supplemental instruction is a correct statement of the law; and (3) whether the district court answered the jury's specific question correctly. *See id.; United States v. Franco*, 874 F.2d 1136, 1143 (7th Cir. 1989). At oral argument, Snyder's attorney conceded that the supplemental instruction was a correct statement of the law. The instruction also clearly answered the jury's specific question. Therefore, the only issue remaining for our consideration is whether the instruction fairly and adequately treated the issue.

██ Snyder's first complaint in this regard is that the instruction undercut his theory of defense, which was that the government had not proved that he intended to sell the images in question. He particularly objects to the fact that the instruction expanded the meaning of the term "sale" after closing arguments when he could no longer address the jury (although at oral argument he could not say what he would have done differently if the instruction had been given earlier). We are not sympathetic to this argument. If Snyder's theory was that the government hadn't proved its case when it had done so under the law as he understood it, then it was his theory of defense that was lacking, not the instruction.

We are no more persuaded by Snyder's contention that the supplemental instruction amounted to an improper direction to the jury to convict. It is certainly true that a judge may not substitute his own judgment for that of the jury's. *See Billeci v. United States*, 184 F.2d 394, 403 (D.C.Cir.1950). However, the supplemental instruction in this case did nothing of the kind. The judge did not express his opinion about whether the evidence showed an intention to sell, however defined. He did not even instruct the jury that selling includes trading (which he could have done by simply responding "yes" to the jury's question). By providing a dictionary definition, he informed the jury that trading is one of the accepted meanings of "selling." We are all the more comfortable with the instruction because it was given after the jury itself raised the possibility that trading constituted selling. There was no abuse of discretion. *See United States v. Ruiz*, 73 F.3d 949, 953 (9th Cir.1996) (dictionary definition of "weapon" upheld because it was neither misleading nor inaccurate).

**C. Multiplicity**

Snyder next argues that counts 3 and 4 of the indictment should have been dismissed for multiplicity because counts 2, 3, and 4 charge him with different methods of committing the same offense. We review *de novo*.

██ It is well settled that the government may not charge a single offense in several counts. *See Sanabria v. United States*, 437 U.S. 54, 66 n. 20, 98 S.Ct. 2170,

57 L.Ed.2d 43 (1978) ("A single offense should normally be charged in one count rather than several, even if different means of committing the offense are alleged."). The purpose of this rule is to prevent multiple punishments for the same act, in violation of the Double Jeopardy Clause of the Fifth Amendment. *See United States v. Kimbrough*, 69 F.3d 723, 729 (5th Cir.1995). In determining whether a course of conduct constitutes one or more separate crimes, we are guided by legislative intent. *See Sanabria*, 437 U.S. at 70, 98 S.Ct. 2170.

In *Kimbrough*, the Fifth Circuit held that an indictment was multiplicitous when it charged the defendant with two counts of violating 18 U.S.C. § 2252(a)(4)(B) on or about the same date. 69 F.3d at 730. The only difference between the two charges was the way in which the jurisdictional element of the statute was satisfied—one charge alleged that the pornographic pictures had traveled in interstate commerce, and the other alleged that the materials used to make the pictures had traveled in interstate commerce. *Id.* The Fifth Circuit emphasized that § 2252(a)(4)(B)'s requirement that the defendant possess "three or more" prohibited items showed that the legislature did not intend for the provision to be used to charge multiple offenses. *Id.*

■ Contrary to Snyder's assertions, the instant case is clearly distinguishable from *Kimbrough*. Although counts 2 and 3 both charge Snyder with violating 18 U.S.C. § 2252(a)(2), count 2 charges receipt of child pornography while count 3 charges distribution of child pornography. Count 4 charges Snyder with possession of child pornography with intent to sell, in violation of § 2252(a)(3)(B). Thus, the charges against Snyder differ substantively, not just in their jurisdictional basis. Furthermore, while § 2252(a)(4)(B), which was at issue in *Kimbrough*, prohibits the possession of three or more items, §§ 2252(a)(2) and (3)(B) prohibit the receipt, distribution, or

possession of "any visual depiction," suggesting that the legislature intended to punish defendants for each depiction. *See United States v. Brechtel*, 997 F.2d 1108, 1112 (5th Cir.1993) (holding that the language "any transaction" suggests a legislative intent to punish individual transactions). Finally, the indictment alleges that the violations occurred over a nine-month period between January and October of 1996, and the government presented evidence that Snyder committed numerous separate acts during this period. Lock testified that he and Snyder spent many weekends together downloading and uploading pornographic images on America Online. Snyder's computer records corroborated this testimony. The Double Jeopardy Clause is not implicated when multiple separate violations of the same provision are charged in multiple ·counts. For this reason, the district court did not err when it denied Snyder's motion to dismiss counts 3 and 4 of the indictment.

**D. Circumstantial Evidence Remarks during Closing Argument**

■ Snyder next contends that the district court should have allowed him to give an example of unreliable circumstantial evidence during his closing argument. He argues that a counter-example was necessary to balance the snowfall-during-the-night illustration, which suggested that circumstantial evidence is highly reliable. Snyder frames the issue as a question of the adequacy of the court's instructions with respect to circumstantial evidence. However, since he didn't object to the court's example or to its instruction, Snyder has waived any such challenge. *See* Fed.R.Crim.P. 30. The only issue before us is whether the district court clearly abused its discretion when it limited Snyder's closing arguments. *See United States v. Grabiec*, 563 F.2d 313, 319 (7th Cir.1977). We hold that it did not.

■ The district court's classic example of circumstantial evidence was meant to counteract the popular misconception

that circumstantial evidence is inferior to direct evidence. *See* Fed.Crim. Jury Instr. 7th Cir., No. 1.05 (1999) ("The law makes no distinction between the weight to be given either direct or circumstantial evidence."). In contrast, Snyder's example, which emphasized the fallibility of circumstantial evidence, would have reinforced the misconception. If Snyder felt that the district court had not adequately and fairly instructed the jury then he should have challenged the court's instructions at the appropriate time rather than resorting to self-help during closing arguments. Only the judge may instruct the jury. *See United States v. Wables*, 731 F.2d 440, 449 (7th Cir.1984). For these reasons, the court's actions were entirely appropriate.

### E. Sentence Enhancements

#### 1. Obstruction of Justice

■ The Sentencing Guidelines mandate a two-level sentence enhancement for any defendant who "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction ... [if] the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." U.S.S.G. § 3C1.1. One example of such obstructive behavior is "threatening, intimidating, or otherwise unlawfully influencing a ... witness." U.S.S.G. § 3C1.1, Application Note 4(a). This is precisely what the district court concluded that Snyder did, citing Doe's testimony that Snyder showed him pistols and rifles and told him not to tell anyone about their weekend activities on pain of death. We review the lower court's interpretation of the obstruction enhancement *de novo*, and its findings of fact for clear error.

Snyder first attacks the obstruction of justice enhancement by arguing that the evidence was not sufficient to demonstrate by a preponderance of the evidence that he

threatened Doe. He contends that Doe's testimony about the threats was not credible because Doe also testified, in great detail, about imaginary fights with bikers and trips to the Museum of Science and Industry, and because Lock flatly denied that any threats were made. However, Lock had not been sentenced at the time he testified, so he had an incentive to deny that Doe had been threatened. Furthermore, Doe's testimony was corroborated by the fact that pistols and rifles were in fact found in Snyder's house. Based on these considerations, the district court found that Snyder had threatened Doe. This was not clear error.

■ Snyder next argues that his sentence should not have been enhanced for obstruction of justice because he did not find out that he was under investigation until after Doe had gone back to Indiana, and so he did not know that he was under investigation when he threatened Doe. It is clear, however, that a defendant need not know that he is under investigation at the time of the obstructive conduct. *See United States v. Schmidt*, 47 F.3d 188, 192 n. 3 (7th Cir.1995) ("[T]he district court's enhancement of the Schmidts' sentences under U.S.S.G. § 3C1.1 for willful obstruction of justice was proper, despite the fact that the defendants' actions ... occurred before they knew they were under investigation."). What is unclear after the 1998 amendments to U.S.S.G. § 3C1.1 is whether an obstruction of justice enhancement is warranted when the obstructive conduct occurs before any investigation has begun. *See United States v. Clayton*, 172 F.3d 347, 355 (5th Cir.1999) (holding that obstructive conduct must occur after an investigation has begun, and citing the Sentencing Commission's statement that its amendments to § 3C1.1 were meant to clarify "the temporal element of the obstruction guideline (i.e., that the obstructive conduct must occur during the investigation, prosecution, or sentencing of the defendant's offense of conviction)," Supplement to Appendix C, Amendment 581

(1998)). We need not resolve this issue today, however, because regardless of when Snyder initially threatened Doe, the threat continued to deter Doe's cooperation after the investigation began. *See United States v. Lallemand*, 989 F.2d 936, 938 (7th Cir.1993) (holding that the obstruction "can be set in train before the investigation begins"). Snyder did not withdraw his threat after the investigation began, and so obstructed justice during the course of the investigation. Accordingly, the district court did not err when it enhanced Snyder's sentence for obstruction of justice.

### 2. Vulnerable Victim

■ According to U.S.S.G. § 3A1.1, a district court must enhance a defendant's sentence by two levels if "the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). A "vulnerable victim" is "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to criminal conduct." U.S.S.G. § 3A1.1, Application Note 2. The district court found that Doe was a vulnerable victim because he had been molested in the past. Accordingly, the court applied the two-level enhancement to Snyder's sentence. We review for clear error.

Snyder first argues that the enhancement was inappropriate because his sentence had already been increased to account for Doe's age. He points out that the Application Notes instruct sentencing courts "not [to] apply ... [the vulnerable victim enhancement] if the factor that makes the person a vulnerable victim is incorporated in the offense guideline."

U.S.S.G. § 3A1.1, Application Note 2. However, the Notes illustrate the point by explaining that "if the offense guideline provides an enhancement for the age of the victim, ... [the enhancement] would not be applied *unless the victim was unusually vulnerable for reasons unrelated to age.*" U.S.S.G. § 3A1.1, Application Note 2 (emphasis added). In this case, the district court premised the enhancement on Doe's history of molestation, a factor that is "unrelated to age." Therefore, there was no error on this score. *See United States v. White*, 979 F.2d 539, 544 (7th Cir.1992).

■ Snyder next argues that the enhancement was inapplicable because he did not specifically target Doe, who was brought to his house by Lock. As the government correctly points out, however, the Sentencing Commission's November 1, 1995 amendments to § 3A1.1's commentary make clear that there is no targeting requirement. *See United States v. Brawner*, 173 F.3d 966, 973 (6th Cir.1999); *United States v. Burgos*, 137 F.3d 841, 843 (5th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 833, 142 L.Ed.2d 690 (1999); *United States v. Cruz*, 106 F.3d 1134, 1135 (3d Cir.1997); *United States v. Feldman*, 83 F.3d 9, 16 (1st Cir.1996).[1]

■ Snyder's final argument is that the government did not prove by a preponderance of the evidence that he knew about Doe's history of molestation before he victimized Doe. He points out that the record does not show when he asked Doe about his prior sexual experience with males. As we have explained before, a defendant "must know that his victim is vulnerable in order to be given an extra dollop of punishment." *United States v. Newman*, 965 F.2d 206, 212 (7th Cir.1992). However, we are certain that Snyder knew that Doe was vulnerable from the very beginning because, as he admitted at oral

---

**1.** Although we noted the 1995 amendments to § 3A1.1's commentary in *United States v. Billingsley*, 115 F.3d 458, 464 n. 4 (7th Cir.1997), we were not asked to reconsider the targeting requirement in that case. Nor did we consider the changes wrought by the amendments in *United States v. Almaguer*, 146 F.3d 474, 478 (7th Cir.1998).

argument, he knew that Lock had been molesting Doe. For this reason, the vulnerable victim enhancement was not clearly erroneous.

## Conclusion

For the foregoing reasons, we AFFIRM Snyder's conviction and sentence.