**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Amando L. MERCADO, a/k/a Armando L. Mercado, Defendant–Appellant.**

**No. 02–1905.**

United States Court of Appeals, Seventh Circuit.

Argued April 23, 2003.

Decided May 22, 2003.

### ORDER

After a jury found Amando Mercado guilty of one count of conspiring to distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), and three counts of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), the district court sentenced him to 110 months' imprisonment and 3 years' supervised release on each count to run concurrently. Mercado challenges his sentences, arguing that the district court erred in increasing his offense level by two points for obstruction of justice based on his false statements at a failed change-of-plea hearing and at sentencing. *See* U.S.S.G. § 3C1.1. We affirm.

### Background

Mercado moved to the United States from Mexico in 1972 and became a lawful permanent resident in 1989. He had no trouble with the law until eleven years later, when, at the age of 46, he obtained a large amount of cocaine–three kilograms–for Luis Garcia, a detective working undercover for the Lake County Sheriffs Drug Task Force.

Garcia began trying to buy cocaine from Mercado in the fall of 2000. On November 20, 2000, Mercado called Garcia, and the two men discussed a half-kilogram transaction. Garcia went to Mercado's house in Hammond, Indiana, to make the buy. When he got there, Mercado informed him that he had been unable to obtain the half-kilogram, but he said that he could get a kilogram for Garcia the following day. Garcia then asked Mercado for a sample (.25 grams), which Mercado gave him.

The next day Garcia returned to Mercado's house, and again Mercado was unable to produce the amount of cocaine that Garcia wanted. Mercado did, however, sell Garcia an ounce (approximately 28 grams) for $800. Over the next couple months Garcia talked to Mercado about making a larger purchase, but, Garcia testified, Mercado "could never get me what I wanted."

On February 12, 2001, Mercado called Garcia offering to sell three kilograms. Garcia told Mercado that for that amount he would have to consult his "uncle," who was actually a confidential informant for the DEA. Garcia and Mercado subsequently agreed on $22,000 per kilogram, and Garcia and his "uncle" met Mercado later that afternoon on a Hammond street corner to make the purchase. Mercado, Garcia, and the informant then drove to the nearby residence of Mercado's girlfriend. Shortly thereafter, Mercado's future co-defendants, Troy Guthrie, Miguel Herrera, and Christopher Keaton, arrived in two cars. Guthrie approached Herrera and Keaton's car and was handed a package. Mercado then followed Guthrie into the house. Mercado emerged with the same package, which he put in another car parked in front of his own, and summoned the informant. After the informant confirmed that the package appeared to contain cocaine, police and DEA agents converged on the scene, arresting Mercado, Guthrie, Herrera, and Keaton. The package recovered was found to contain 2,979 grams of cocaine. Mercado had another 13 grams of cocaine in his pocket when arrested.

A grand jury indicted all four men for conspiring to distribute cocaine and for possession with intent to distribute cocaine in connection with the February 12 transaction. Mercado also was indicted for the two November 2000 transactions (the .25

gram sample and the ounce). Guthrie and Herrera pleaded guilty to the conspiracy charge. Mercado initially agreed to plead guilty to the conspiracy charge in exchange for, among other concessions, the dismissal of the three possession counts.

On September 14, 2001, the district court convened a change-of-plea hearing at which Mercado was assisted by a Spanish/English interpreter. The court stopped the hearing, however, when several of Mercado's answers about the events surrounding the February 12 transaction indicated a reluctance to admit guilt. For instance, when asked why he was guilty, Mercado merely replied, "Because I spoke with Garcia." Upon further questioning, Mercado downplayed his role in the transaction. He testified that Garcia had asked him for 10 kilograms of cocaine in February 2001 but that he did not have any cocaine and did not know why Garcia had approached him for the drug; that "by coincidence" Guthrie asked him if he knew anybody who wanted to buy a large amount of cocaine; and that "by coincidence" he remembered Garcia. After giving defense counsel a chance to talk to Mercado and admonishing Mercado to answer truthfully, the district court resumed its questioning. When asked again about the February 12 transaction, Mercado this time explained that Garcia told him to just "let him know who had it" and then he would not have "to get mixed up in anything else." The district court then asked, "Well, did you do anything else other than tell him who had it?" Mercado said "No." At this point the district court rejected the plea agreement, expressing concern that Mercado was attempting to plead guilty to a crime that, based on his equivocal statements, he may not have committed.

Mercado went to trial five days later along with Keaton. Neither Mercado nor Keaton testified at the trial; Guthrie,

Herrera, and Detective Garcia, however, did. Their testimony established that Mercado indeed had done more than simply provide Garcia with a name–he initiated the February 12 transaction with Guthrie who, in turn, contacted Herrera, he negotiated the price, he arranged the exchange, and he acquired the three kilograms of cocaine for Garcia. The jury found Mercado guilty of all four counts.

At sentencing, the probation officer recommended a two-level increase in Mercado's offense level of 28 for obstruction of justice based on his false statements at the aborted guilty plea hearing. In particular, the probation officer opined that Mercado had testified falsely by (1) claiming not to know why Garcia contacted him for cocaine in February 2001 when, in fact, Mercado had provided Garcia with the drug twice in November 2000; and (2) asserting, contrary to the trial testimony, that it was mere coincidence that Guthrie contacted him about the cocaine and that he did nothing aside from provide Garcia with Guthrie's name.

Mercado objected to the obstruction adjustment and testified at the sentencing hearing. Mercado explained that he had not tried to mislead the court at the plea hearing; rather, he had been confused by the interpreter and the district court's questions. Specifically, he testified that he could not hear through his headset and that the interpreter translated only half of his answers. The district judge, who happened to be fluent in Spanish, disagreed, finding that the statements were perjurious. In addition, the district court found that Mercado committed perjury at sentencing by, among other things, indicating that the trial witnesses lied and that he was "set up" by Garcia. Based on these findings, the district court concluded that an adjustment for obstruction of justice under U.S.S.G. § 3C1.1 was warranted.

The two-level increase gave Mercado a total offense level of 30, which, combined with Mercado's criminal history category of I, resulted in an imprisonment range of 97 to 121 months. The district court imposed concurrent 110–month prison terms followed by three years' supervised release. Without the obstruction adjustment, Mercado's imprisonment range would have been 78 to 97 months.

## Analysis

On appeal, Mercado concedes that given his equivocal answers at the change-of-plea hearing the district court acted within its discretion in rejecting his guilty plea. But, he argues that the court erred in finding that those statements merited a two-level increase for obstruction of justice because they were neither material nor willful. A sentencing court must increase a defendant's offense level under § 3C1.1 if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1; *see also United States v. Snyder*, 189 F.3d 640, 648 (7th Cir.1999). Not every false or inaccurate statement warrants an increase for obstruction of justice, however. U.S.S.G. § 3C1.1, comment. (n.2). In order to justify a § 3C1.1 adjustment, the false testimony must amount to perjury. *Id.*, comment. (n.4 (b)); *United States v. Dunnigan*, 507 U.S. 87, 93–94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). Perjury is defined for purposes of § 3C1.1 as it is under the federal perjury statute–that is, as giving "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94; *see also* 18 U.S.C. § 1621. The Supreme Court has instructed that where, as here, a defendant objects to the applica-

tion of § 3C1.1, the sentencing court "must review the evidence and make independent findings necessary to establish" each of those three elements–falsity, materiality, and willfulness. 507 U.S. at 95.

Mercado attacks the district court's determination that his statements at the plea hearing were perjurious, arguing that (1) the court's findings lacked the requisite specificity to support the adjustment; (2) he did not, in fact, commit perjury because his inaccurate statements resulted from confusion; and (3) the statements could not have been material in any case. We review *de novo* whether the district court made the appropriate findings under *Dunnigan,* but review the court's factual findings only for clear error. *United States v. Carrera,* 259 F.3d 818, 831 (7th Cir.2001). Under the clear error standard, we may overturn a sentencing court's factual finding only if our review of the record leaves us with a "definite and firm conviction that a mistake has been committed." *United States v. Stokes,* 211 F.3d 1039, 1044 (7th Cir.2000) (internal citation omitted). With those standards in mind, we turn to Mercado's arguments.

### 1. Adequacy of the court's findings

We first address Mercado's argument that the district court's findings were deficient under *Dunnigan* because it did not adequately address the willfulness or materiality elements. Although a sentencing court should address each element of perjury in a separate and clear finding, under *Dunnigan* a determination that "encompasses all of the factual predicates for a finding of perjury" will suffice. 507 U.S. at 95. At sentencing in this case the district court explicitly found all three elements of perjury: it identified the false statements from the plea hearing, explained why it found them to be untrue, and concluded that the lies were material

and willful. Mercado, however, contends that the court's findings were not specific enough because the court did not explain precisely *why* the falsehoods were material or that they were made with the intent to obstruct justice. We disagree.

■ Although the district court was not as explicit as it could have been in justifying its decision, we believe that the court satisfied *Dunnigan's* requirements. It is apparent from the court's findings that it considered Mercado's statements material because they related to his culpability. Indeed, the court first found that Mercado lied about why Detective Garcia contacted him for drugs on February 12, and that the lie was material since it related to his distribution of cocaine to Garcia on two prior occasions as charged:

> The Court finds that this was material and was not credible and, in fact, was perjurious, because of the testimony during the trial that the defendant had, in fact, dealt drugs before with the same individuals on November 20th and November 21st. And the jury found beyond a reasonable doubt–this court agrees with the jury's finding–that he was guilty of Counts 3 and 4, which dealt with the prior negotiations.

(Sentencing Tr. at 27.) The district court next found that Mercado lied about having done nothing more than provide a name, and that lie was material to his complicity in the cocaine conspiracy:

> The Court finds that this was a material issue regarding the charges against the defendant in that the testimony during trial, which this Court finds to be credible, was that he assisted the parties not only in negotiating for the drugs, but assisted in getting the drugs delivered and made arrangements to help in the delivery. He met with individuals at one location, and took them to a second location. And at the second location,

took the individuals to the car where the drugs were located. The Court finds that the testimony given before that he did nothing more was not truthful, was perjurious and was material and relevant to the issues in this lawsuit and these criminal charges.

*Id.* at 28.

The sentencing transcript also reflects that the district court found that Mercado told both lies willfully and with the intent to obstruct justice. To this end, the district court explicitly discredited Mercado's claim that he was confused, stating:

> The Court has strong doubts as to the need of the interpreter, but does find that the interpreter did not do a poor job. This Court does not believe that the defendant was confused; instead, this Court finds that the defendant was making every effort to attempt to straddle the facts, and attempt to be outside the facts so as to find him guilty, and was attempting to avoid conviction in this case.

*Id.* Mercado contends that this finding is insufficient to establish perjury under *Dunnigan* because the court also did not explicitly find that his inaccurate testimony did not result from "mistake" or "faulty memory." But at sentencing Mercado never claimed that he was simply mistaken or that he had forgotten; he said that he was confused by the interpreter and the court's questions. In any case, by discrediting Mercado's claim that he was "confused," the court essentially concluded that his testimony was intentionally false and not the result of confusion, mistake, or faulty memory. *See, e.g., Stokes,* 211 F.3d at 1045 (finding explicitly rejecting defendant's claim of confusion sufficient to establish willfulness element). Moreover, the court's determination that Mercado made "every effort to attempt to straddle the facts, and attempt to be outside the facts so as to find him guilty, and was attempting to avoid conviction in this case" suggests that the court further found that the statements were made with the specific intent to obstruct justice. Because the district court's findings encompass all of the elements of perjury, including materiality and willfulness, they are sufficient to support the obstruction adjustment.

### 2. Whether the statements were intentionally false

Mercado next contends that he did not commit perjury because he did not intentionally lie at the plea hearing. He argues that in finding otherwise the district court ignored the evidence demonstrating that his inaccurate answers stemmed from confusion. Specifically, Mercado maintains that not only was he confused by the interpreter but he was nervous and confused by the court's questions, particularly since he had little formal education and this was his first experience with the criminal justice system. In support, Mercado points to his own testimony at sentencing as well as instances during the plea colloquy that, he says, reveal his confusion, such as his repeated references to the judge as "Your Majesty." But it is not our role to reweigh the evidence; a fact-finder's choice between two permissible views of the evidence cannot be clearly erroneous. *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

Furthermore, special deference is given to findings based upon credibility determinations, which "can virtually never be clear error." *Id.* at 575. Here, Judge Lozano conducted Mercado's plea hearing, trial, and sentencing, and, based on his personal observations, disbelieved Mercado's claim of confusion. We do not second-guess the district judge on matters of credibility because "he or she has had the best opportunity to observe the verbal and non-verbal

behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused and nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." *Stokes*, 211 F.3d at 1045 (internal quotations omitted); *see also Anderson*, 470 U.S. at 575 ("[O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."). Judge Lozano was in the best position to evaluate the truthfulness of Mercado's claim that he was confused, and nothing in the record here firmly convinces us that the district court was mistaken in refusing to accept that claim. Thus, we cannot say that the court clearly erred by finding that Mercado perjured himself at the plea hearing.

### 3. Whether the falsehoods were material

Finally, Mercado contends that because the false statements minimizing his culpability were made at a failed guilty plea hearing, they could not have been designed to affect the process to his benefit and, thus, could not have been material. "Material" evidence is information that, if believed, would tend to influence or affect the issue under determination. U.S.S.G. § 3C1.1, comment. (n.6); *United States v. Arambula*, 238 F.3d 865, 868 (7th Cir. 2001). Hence, a criminal defendant's false testimony at trial is material when it is crucial to the question of guilt or innocence. *Arambula*, 238 F.3d at 868. And, "a falsehood told at a pretrial hearing is material if it is calculated to substantially affect the issue under determination at that hearing." *United States v. Galbraith*, 200 F.3d 1006, 1014 (7th Cir.2000). It is undisputed here that Mercado's false testi-

mony at the change-of-plea hearing was germane to the issue then at hand: the district court rejected his plea. But Mercado most likely was not trying to get the court to reject his guilty plea, and, in that sense, it could be said that his false statements at the plea hearing were not material ones.

■ Nevertheless, his lies could have been designed to affect the outcome of the case. A lie is material not only when it is crucial to the ultimate question of guilt or innocence but when it "makes it more difficult for the court to give him the sentence that is his just desert." *United States v. Sapoznik*, 161 F.3d 1117, 1121 (7th Cir. 1998). For that reason, numerous courts have held that a defendant's lies during a plea hearing minimizing his role in the offense are material for purposes of § 3C1.1. *See, e.g, United States v. Sanders*, 162 F.3d 396, 402–03 (6th Cir.1998) (defendant's false testimony at plea hearing regarding his "full involvement" was material insofar as it related to his role in the offense under the sentencing guidelines); *United States v. Hernandez Coplin*, 24 F.3d 312, 317–18 (1st Cir.1994) (false testimony at plea hearing regarding offense conduct was material since it might have impacted the sentence); *cf. United States v. Bernaugh*, 969 F.2d 858, 862 (10th Cir. 1992) (false testimony at plea hearing regarding co-defendants' roles in transaction "easily could be an attempt to affect his own sentencing, by impairing the court's inquiry under Fed.R.Crim.P. 11(f), obfuscating his role in the transaction, and otherwise.") Like the defendants in those cases, it is apparent that Mercado, albeit unsuccessfully, sought to reap the benefits of his plea agreement while downplaying his role in the transaction with the hope of getting a lesser sentence. Indeed, if Mercado's statements were believed, he might have had a viable claim for a reduction at

sentencing for being a minor participant in the offense. *See* U.S.S.G. § 3B1.2(b).

Mercado counters that no minor participant argument was ever raised, either by him or the district court. But the fact that Mercado's assertions ultimately did not help him is inconsequential. "[A]ll that is required for a lie to be material is that it could, to some reasonable probability, affect the outcome of the process.... That it did not actually affect it is–immaterial." *United States v. Buckley*, 192 F.3d 708, 710 (7th Cir.1999). True, the district court did not mention § 3B1.2 in support of the obstruction adjustment. However, we have upheld adjustments where, like here, the materiality of the false testimony was readily apparent from the context. *See, e.g., United States v. Griffin*, 310 F.3d 1017, 1024 (7th Cir.2002) (materiality of the defendant's false alibi testimony was obvious from the context); *Carrera*, 259 F.3d at 832 (specifics not necessary where there was "no doubt that the district court considered [the defendant's] knowledge of his brother's drug dealing activities to be material" in cocaine conspiracy case). Because Mercado's false statements related to his culpability and could have, if believed, affected his potential sentence, the district court did not clearly err in finding them material for purposes of § 3C1.1.

Conclusion

For these reasons, we conclude that the district court properly assessed Mercado a two-level adjustment for obstruction of justice based on his perjury at the plea hearing. Accordingly, we need not address Mercado's additional challenge to the district court's determination that he also perjured himself at sentencing. Even if the court's findings as to Mercado's statements at sentencing were inadequate to support the adjustment, one instance of obstructing justice mandated that the ad-

justment be imposed. *See Griffin*, 310 F.3d at 1023; *see also United States v. Zaragoza*, 123 F.3d 472, 485–86 (7th Cir. 1997) (holding that obstruction adjustment is mandatory upon finding of qualifying conduct). The judgment of the district court therefore is AFFIRMED.