

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-13-2007

# USA v. Rinick

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3776

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Rinick" (2007). *2007 Decisions.* Paper 1494.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1494

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3776

UNITED STATES OF AMERICA

v.

WILLIAM RINICK,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 02-cr-00492-1)
District Judge: Honorable Eduardo C. Robreno

Submitted Under Third Circuit LAR 34.1(a)
January 16, 2007

Before: McKEE, AMBRO, and STAPLETON, Circuit Judges

(Opinion filed: March 13, 2007)

OPINION

AMBRO, Circuit Judge

A jury convicted the appellant, William Rinick, on one count of conspiracy to

distribute cocaine, 21 U.S.C. § 846, six counts of cocaine distribution, 21 U.S.C.

§ 841(a)(1), and one count of possession of cocaine with intent to distribute within 1,000

feet of a school, 21 U.S.C. § 860. He challenges the reasonableness of his 360-month sentence based solely on the District Court's alleged error in calculating the applicable advisory Guidelines range. Specifically, Rinick contends that the Court erred when it increased his base offense level by two points as a result of its finding that he had obstructed justice. *See* U.S.S.G. § 3C1.1.[1]

We review criminal sentences for reasonableness by examining the factors in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 258–65 (2005); *United States v. Cooper*, 437 F.3d 324, 329–32 (3d Cir. 2006). An indispensable part of arriving at a reasonable sentence is a correct calculation of the advisory Guidelines range. *Cooper*, 437 U.S. at 330. We review a District Court's interpretation of the Guidelines *de novo* and its factual findings for clear error. *United States v. De La Cruz*, 460 F.3d 466, 468 (3d Cir. 2006). Because we write only for the parties, we mention only those facts relevant to deciding this appeal.

Rinick argues that the District Court's findings do not support the application of the Guidelines' obstruction-of-justice enhancement for two reasons: (1) his conduct was not sufficiently "obstructive"; and (2) he did not possess the requisite mental state—namely, he did not know of any pending investigation or judicial proceeding at the time he engaged in the allegedly obstructive behavior. We disagree with both of these contentions.

---

[1]The District Court had jurisdiction over this matter under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

In its extensive sentencing memorandum, the District Court made the following findings, which are not clearly erroneous:

The court observed the demeanor of witnesses Sam Pollino, Michael Focoso and Patricia Bongiorno on the stand, and finds them, under the circumstances, to be credible. The court generally finds that an enhancement is warranted based on the following evidence:

i.  Sam Pollino testified at trial that Rinick, having heard an answering machine message in which Pollino was identified as a "rat," placed a gun to Pollino's head and stated, "[Y]ou wouldn't even know it." This account was corroborated through the testimony of Focoso, who stated that Rinick informed him that he had threatened Pollino with a gun.

ii.  Pollino also testified that, on another occasion, Rinick informed him that "this is the room where we're going to whack you," a comment that Pollino interpreted to mean that he could be killed for cooperating [with the police]. Focoso also testified that it was his understanding that Rinick meant to hurt or kill Pollino if Pollino was, in fact[,] cooperating.

iii.  Patricia Bongiorno testified at trial as to Rinick's attempts to intimidate her into divulging information concerning the whereabouts of Sam Pollino. In particular, Mrs. Bongiorno testified that Rinick, looking for Pollino, entered her home, sat uninvited at her dining room table and demanded information as to Pollino's whereabouts, offered her $2000 in exchange for information, offered her husband $1000 a week to be a "driver" for Rinick, that she and her family were intimidated by Rinick and his behavior and attempted to pacify him without giving any information as to Pollino's whereabouts.

iv.  Pollino testified that Rinick patted him down on one occasion in an attempt to determine whether he was wearing a recording device.

v.  Focoso testified at trial as to Rinick's attempts to influence him against cooperating by referring to people who had been murdered.

As to Rinick's first argument, we have no trouble concluding that this

3

behavior—searching out and threatening to kill cooperating witnesses—rises to the level

of obstructive conduct. *See* U.S.S.G. § 3C1.1, cmt. (listing examples of obstructive

conduct). As the Government's brief highlights, behavior less egregious than this has

been held sufficient to warrant the Guidelines' obstruction-of-justice enhancement. *See*

Br. of Appellee at 23–24 (citing *United States v. Drapeau*, 121 F.3d 344 (8th Cir. 1997);

*United States v. Pippeni*, 115 F.3d 422 (7th Cir. 1997); *United States v. Campbell*, 985

F.2d 341 (7th Cir. 1993); *United States v. Grady*, 997 F.2d 421 (8th Cir. 1993); *United*

*States v. Rivera*, 971 F.2d 876 (2d Cir. 1992); *United States v. Davila*, 964 F.2d 778 (8th

Cir. 1992); *United States v. Hershberger*, 956 F.2d 954 (10th Cir. 1992)).

Rinick's stronger argument is his second. He claims that, in order for the § 3C1.1

enhancement to apply, he must have subjectively known of a pending investigation into

his criminal conduct—knowledge he says that he did not have. Section 3C1.1 of the

Guidelines provides that

> [i]f (A) the defendant willfully obstructed or impeded . . . the administration
> of justice with respect to the investigation, prosecution, or sentencing of the
> instant offense of conviction, and (B) the obstructive conduct related to (i)
> the defendant's offense of conviction and any relevant conduct . . . ,
> increase the offense level by 2 levels.

The common understanding of the term "willfully" in the obstruction-of-justice context

includes a specific intent to interfere with a criminal proceeding—a *mens rea* necessarily

involving knowledge of the criminal proceedings obstructed. *See* 18 U.S.C. § 1503;

SARAH N. WELLING ET AL., FEDERAL CRIMINAL LAW AND RELATED ACTIONS 166–68,

§ 19.3.C (1998) (citing *United States v. Aguilar*, 515 U.S. 593 (1995); *Pettibone v. United*

4

*States*, 148 U.S. 197 (1895)); MODEL PENAL CODE Pt. I, art. 2, § 2.02(2)(a) & Pt. II, art.

242, § 242.1.  The Government contends, however, that our decision in *United States v.*

*Jenkins* rejected this common understanding of the requisite *mens rea*.  *See* 275 F.3d 283,

286–89 (3d Cir. 2001).  And indeed, *Jenkins* noted that "awareness is not a prerequisite

for imposing the obstruction-of-justice" Guidelines enhancement.  *Id.* at 288.  But while

superficially supporting the Government, our statement, upon closer analysis, may not be

as conclusive as the Government would have it.

When making our ruling in *Jenkins*, we cited the Seventh Circuit Court of Appeals

in *United States v. Snyder*, 189 F.3d 640, 648 (7th Cir. 1999), for the proposition that the

Guidelines' obstruction-of-justice enhancement did not require specific intent to impede

an investigation.  *Snyder*, however, stemmed from an earlier case in that Circuit, *United*

*States v. Polland*, 994 F.2d 1262 (7th Cir. 1993).[2]  The specific issue in *Polland* was

whether the enhancement could apply if a defendant's obstructive conduct primarily

affected an investigation of another person—even if there was no investigation of the

defendant at the time.  The Seventh Circuit answered "yes," saying that willfulness can be

present, as long as that investigation, known to the defendant, is somehow relevant to his

*own* offense of conviction, *i.e.*, if the investigation of the other person could produce

---

[2]*Snyder* contained no legal analysis of the *mens rea* required for a § 3C1.1 Guidelines enhancement.  It merely cited *United States v. Schmidt*, 47 F.3d 188 (7th Cir. 1995), which likewise contained no analysis.  Moreover it provided no factual context and mentioned the *mens rea* requirement of § 3C1.1 in *dictum* in a footnote.  *Id.* at 192 n.3. *Schmidt*, however, did cite *Polland*.  *See id.*

evidence relevant to the defendant's prosecution. *Id.* at 1269. It was undisputed that the defendant in *Polland* fit this bill; he subjectively knew of a related investigation into another person when he willfully obstructed it. *Id.* at 1265 (indicating that the defendant knew of the other person's arrest in their mutual drug conspiracy). *Polland*, therefore, does not support the notion that the § 3C1.1 Guidelines enhancement requires no knowledge of *some* investigation or pending proceeding.

The facts in our *Jenkins* case, which the Government cites, were similar to those in *Polland*. *Jenkins* involved two investigations of the same defendant—one state and one federal. Jenkins impeded the state proceedings against him, prompting the federal court to enhance the sentence on his federal crime. Though we eventually held the state proceeding not sufficiently related to the federal proceeding to justify the Guidelines' enhancement, we first held it irrelevant that the defendant did not know about his federal proceeding. *Jenkins*, 275 F.3d at 286–89.[3] This was the context of our statement that "awareness is not a prerequisite for imposing the obstruction-of-justice" Guidelines enhancement. *Id.* at 288.

We might conclude, then, that the facts of *Jenkins*—like those in *Polland*—do not support the full implications of its sweeping language and that our holding there did not erase the requirement that, in order "willfully" to obstruct justice (thereby warranting the Guidelines enhancement), a person must subjectively know of *some* proceeding, even if

---

[3]Judge Becker did not join that part of the panel's decision. *See Jenkins*, 275 F.3d at 289 n.7.

not the particular proceeding under review.  However, *Jenkins* did not cite *Polland*, but rather *Snyder*.  *See id.*  And reading *Jenkins* that way would be in tension with our express approval of *Snyder*, where the defendant had no knowledge of the only proceeding of which to be aware (his own federal prosecution).  Moreover, *Jenkins* specifically disagreed with cases from several Courts of Appeals that have held the obstruction-of-justice enhancement to be applicable only "where misconduct occurs with knowledge of an investigation, or at least with a correct belief that an investigation is probably underway."  *See id.* (citing *United States v. Oppedahl*, 998 F.2d 584, 586 (8th Cir. 1993); *United States v. Brown*, 237 F.3d 625, 626–28 (6th Cir. 2001); *United States v. Lister*, 53 F.3d 66, 69–71 (5th Cir. 1995)).  Yet we still did not recognize in *Jenkins* the significant point that the defendant in that case, in fact, knew of a related proceeding—unlike in *Oppedahl* and similar cases, where there was no such proceeding (and thus nothing to know).

We need not determine the breadth of *Jenkins*'s holding today, however, because we conclude that the District Court found that Rinick *did* know about the investigation his conduct sought to obstruct.  The District Court adopted the Pre-Sentence Investigation Report, which contained a recitation of Rinick's relevant conduct.  Significantly, the report states that after Rinick received a message warning him that Pollino was a "rat," he "threatened to kill . . . Pollino, *believing that he was working with the law enforcement*" (emphasis added).  Moreover, the report makes clear that Rinick's threatening behavior toward Pollino's neighbors (during which he sought the whereabouts of Pollino) occurred

7

after authorities executed search warrants on Rinick's properties. These findings are not clearly erroneous and establish that Rinick correctly believed (or, in fact, knew) that he was under investigation at the time of his obstructive conduct. That is obstruction of justice by any definition.

*   *   *   *   *

For the reasons stated above, we rule that the District Court did not err in applying the two-level Guidelines enhancement for obstruction of justice. As a result, we affirm Rinick's 360-month sentence.