UNITED STATES of America, Plaintiff–Appellee,

v.

Juan RIOS–CALDERON and Daniel Nungaray–Robles, Defendants–Appellants.

Nos. 93–1583, 93–2706.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 15, 1995.

Decided March 19, 1996.

Barry Rand Elden, Chief of Appeals, James Shapiro (argued), Sergio E. Acosta, Office of U.S. Atty., Criminal Appellate Div., Chicago, IL, for U.S., in No. 93-1583.

Edwin R. McCullough (argued), Chicago, IL, for Juan Rios-Calderon.

Barry Rand Elden, Chief of Appeals, James Shapiro (argued), Office of U.S. Atty., Criminal Appellate Div., Chicago, IL, for U.S., in No. 93-2706.

Paul M. Brayman, Chicago, IL, for Daniel Nungaray-Robles.

Before ESCHBACH, MANION, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Juan Rios–Calderon and Daniel Nungaray–Robles were indicted, along with Enrique Martinez–Hernandez, on one count of conspiring to distribute five kilograms of cocaine, and one count of possessing the cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1). Nungaray and Martinez went to trial before a jury, while Rios pleaded guilty to both counts on the day the trial began. The jury convicted his co-defendants on the conspiracy count. Nunga-

ray seeks a new trial on the ground that the trial court erred in replying to a note sent by the jury inquiring about the meaning of the terms "entrapment" and "ensnarement." Rios challenges his sentence on the ground that it is "irrationally disproportionate" to the sentences his co-defendants received.[*] We conclude that the district court gave the jury appropriate supplemental guidance, and we therefore affirm Nungaray's conviction. Because Rios' sentence was imposed in conformity with the Sentencing Guidelines, we have no jurisdiction to review it on appeal. His appeal is therefore dismissed.

## I.

The government's case rested heavily on the testimony of Carlos Gonzalez, a confidential informant working for the Drug Enforcement Administration. Gonzalez was a citizen of Mexico, who had begun providing information to the DEA in 1990. That same year, he came to Chicago with the DEA's help, where he participated in approximately twelve investigations. He was paid about $54,000 for his efforts.

Gonzalez met Nungaray at the body shop where Gonzalez worked. He began discussing cocaine with Nungaray in late October or early November 1991. At the same time, he informed the DEA that he knew someone who had access to large quantities of cocaine. In cooperation with the DEA, Gonzalez then met with Nungaray and Martinez on several occasions, at one time recording the conversation, and at another time introducing them to another DEA undercover agent. At one meeting, Nungaray and Martinez told Gonzalez that they could deliver ten kilograms of cocaine to him, but that they preferred to structure the deal as two five-kilo transactions. On November 12th, the group met again and the "buyers" agreed to accept the first five kilos the next day, for a price of $120,000. On November 13th, Gonzalez coordinated the place and time where the exchange would be made. He later rode with Martinez to the place where Rios was waiting next to a Cadillac. Rios opened the trunk of the Cadillac and showed the other two the five kilos of cocaine. Rios then asked them

where the money was, and Martinez told him that it was nearby. As Martinez and Gonzalez walked back to their car, DEA agents arrested Martinez, Rios, and Nungaray (who had stayed behind at the body shop). Rios agreed to allow the DEA agents to search the trunk of the car, where they found 5,016 grams of 91% pure cocaine.

## II.

Both at the trial and on appeal, Nungaray relied almost exclusively on his claims of entrapment and coercion. During cross-examination, defense counsel attempted to cause Gonzalez to admit that his continued presence in the United States depended upon his "snaring" people into selling him drugs. Gonzalez refused to accept that characterization of his arrangement with the government. He replied instead that "[i]f I see a person that will sell me drugs, I mean, I don't trap them, the agents get them." Testimony at the trial also revealed the lucrative nature of Gonzalez's association with the DEA and the agency's role in keeping him from being deported to Mexico.

Relying on this evidence and Nungaray's own testimony, defense counsel devoted much of his closing argument to the entrapment defense. His argument used the words "entrap" and "ensnare" interchangeably. In rebuttal, the government drew a distinction between the term "ensnare," which it equated with "mere solicitation by a government agent," and the legal defense of entrapment. The trial court, without objection from Nungaray, gave the jury this Court's standard entrapment instruction. Fed.Crim. Jury Instr. 7th Cir. § 4.04.

During its deliberations, the jury sent a note to the judge asking for "a definition of the words 'entrapment' and 'ensnarement' as it pertains to the law." Nungaray's lawyer argued that the court should either give the jury the definition of "entrapment" from Black's Law Dictionary, or it should instruct them that it was not going to provide any additional guidance. Instead, the judge

---

[*] Martinez has not appealed his conviction.

adopted the government's proposed response and instructed the jury as follows:

> As it pertains to the law, the Court has instructed you in a series of instructions as to the legal meaning of the word "entrapment." The Court must refer you back to those instructions for that definition.
>
> The word "ensnarement" is not a legal term and does not constitute a legal defense. The Court cannot instruct you as to that word as it pertains to the law and refers you to the regular meaning of that word.

The jury then convicted the defendants on the conspiracy charge and acquitted them on the possession charge.

Both in the motion for a new trial and here, Nungaray argues that the district court's supplemental instruction had the practical effect of destroying his entrapment defense. Defense counsel had used the words "entrapment" and "ensnarement" interchangeably, and Nungaray asserts that the court's later instruction implied to the jury that defense counsel's use of the word "ensnarement" was somehow improper or misguided and related to something other than entrapment.

■■■ We review a trial court's decisions on "[t]he necessity, extent, and character of any supplemental instructions to the jury" only for abuse of discretion. *United States v. Sanders*, 962 F.2d 660, 677 (7th Cir.) (citation omitted), *cert. denied*, 506 U.S. 892, 113 S.Ct. 262, 121 L.Ed.2d 192 (1992). In general, the question on review of the sufficiency of jury instructions is "whether the instructions as a whole were sufficient to inform the jury correctly of the applicable law and the theory of the defense." *United States v. Rice*, 995 F.2d 719, 724 (7th Cir.1993). For a supplemental instruction, we ask whether (1) the instructions as a whole fairly and adequately treat the issues, (2) the supplemental instruction is a correct statement of the law, and (3) the district court answered the jury's specific question correctly. *Sanders*, 962 F.2d at 677; *United States v. Franco*, 874 F.2d 1136, 1143 (7th Cir.1989).

■■■ In this case, the district court's supplemental instruction easily passes all three hurdles. The first part of the supplemental instruction simply referred back to the initial instruction on entrapment, which no one has challenged. The second part notes, correctly, that the law does not have an "ensnarement" defense separate and apart from the entrapment defense. Nungaray points out that the definition of "entrap" in Black's includes the word "ensnare," but we do not see why that impugns the judge's instruction. For example, Black's also defines "aid and abet" as "help, assist, or facilitate the commission of a crime;" it defines "estop" as "to stop, bar, or impede; to prevent; to preclude;" it defines "rescission of contract" as "to abrogate, annul, avoid, or cancel a contract." Black's Law Dictionary, 6th ed.1990. A definition is simply a formula of words that helps the reader understand what is meant by the term at issue. Any given word used as part of that formula does not become the legal equivalent of the word being defined. The judge's supplemental instruction made it clear that the jury was free to consider the entrapment defense in accordance with his original instruction, and it also clearly told the jury that there was no distinct doctrine of "ensnarement." We presume that the jury was capable of understanding the court's instructions, which plainly allowed them to evaluate Nungaray's claim of entrapment. See *United States v. Lomeli*, 76 F.3d 146, 149–50 (7th Cir.1996); *Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954) ("[o]ur theory of trial relies upon the ability of a jury to follow instructions").

In fact, judicial decisions do not reflect a uniform usage of the two terms as either synonymous or distinct. Ensnare or ensnarement often appear as synonyms for entrap or entrapment. See, e.g., *Sherman v. United States*, 356 U.S. 369, 383, 78 S.Ct. 819, 826, 2 L.Ed.2d 848 (1958) (Frankfurter, J., concurring); *United States v. Murphy*, 852 F.2d 1, 6 (1st Cir.1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989); *United States v. Gardner*, 516 F.2d 334, 349 (7th Cir.), *cert. denied*, 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975). Occasionally, however, courts have used the term "ensnare" to describe a situation where the

government obtains evidence against suspected criminals through a controlled buy or other sting operation without entrapping them. See, e.g., *Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 688, 126 L.Ed.2d 655 (1994). In the course of rejecting an independent defense of "outrageous government conduct," this Court distinguished between entrapment and elaborate sting operations used to "ensnare persons disposed to criminal activity." *United States v. Van Engel*, 15 F.3d 623, 631 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2163, 128 L.Ed.2d 886 (1994). The instruction that the district court gave here was consistent with this Circuit's law and well within its discretion. Because we find no abuse of discretion in the approach the judge chose, we affirm Nungaray's conviction.

### III.

■ Rios, who pleaded guilty, has attempted to appeal from the district court's decision to sentence him to a term of imprisonment of 192 months, with a ten year period of supervised release to follow and a special assessment of $50 each on Counts One and Two of the indictment. He claims that this sentence "violates due process and equal protection as it is irrationally disproportionate to the identical ten year, one month sentences of the codefendants who engineered the deal." Our jurisdiction to review sentences comes from 18 U.S.C. § 3742, which specifies four grounds for appellate review at the behest of a defendant: (1) the sentence was imposed in violation of law, (2) it was imposed as a result of an incorrect application of the Sentencing Guidelines, (3) it goes outside the range specified in the Guidelines, or (4) it was imposed for an offense for which there is no guideline and it is plainly unreasonable.

The trial court found that the base offense level for Counts One and Two is 32. In accordance with the recommendation in the Presentence Report, it then granted a two level reduction under U.S.S.G. § 3B1.2(b) because Rios was a minor participant in the offense, which lowered the level to 30. In addition, the court granted Rios a three level downward departure based on his acceptance

of responsibility and "early voluntary cooperation" with the United States, pursuant to U.S.S.G. § 3E1.1. Thus, Rios' final offense level was 27. With a Criminal History Category of III, this led to a Guidelines range of 87 to 108 months. Rios, however, was subject to a mandatory minimum sentence of 20 years, due to the amount of drugs involved and the fact that this was a second offense. See 21 U.S.C. § 841(b)(1)(A)(ii). Based on the government's motion under U.S.S.G. § 5K1.1 and the plea agreement, the court chose to depart downward from 240 months (20 years) to the 192 months actually imposed.

Rios attempts to bring his argument under the first possibility for appellate review, claiming that his sentence violated various constitutional provisions. His only support for this theory, however, is the fact that his sentence appears harsh in comparison to the sentences imposed upon his co-defendants. Rios stresses that he was just a "mule" in this operation and Nungaray and Martinez were the key actors. Unfortunately for Rios, this court has held that nothing in § 3742(a) allows review of a sentence imposed in conformity with the Guidelines on the ground that a co-defendant was treated differently. *United States v. Smith*, 897 F.2d 909, 911 (7th Cir.1990); *United States v. Colello*, 16 F.3d 193, 194 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2153, 128 L.Ed.2d 878 (1994).

■ It is true that Rios' sentence was higher than the Guidelines range, because of the mandatory minimum required by 21 U.S.C. § 841(b)(1)(A)(ii). But it is plain, and Rios does not dispute the fact, that this statute applied to his case. Thus, in the end Rios is arguing that this Court must review the district court's discretionary refusal to depart even further downward from the statutory sentence than it already did. We have no jurisdiction to do this, as we have made clear on a number of occasions. See, e.g., *United States v. Prevatte*, 66 F.3d 840, 843 (7th Cir.1995); *United States v. Blackwell*, 49 F.3d 1232, 1241 (7th Cir.1995); *United States v. Shaffer*, 993 F.2d 625, 628–29 (7th Cir. 1993).

## IV.

For the reasons stated, we therefore AFFIRM the conviction of Daniel Nungaray–Robles, and we DISMISS the appeal of Juan Rios–Calderon for lack of jurisdiction.