UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles ALEXANDER, Defendant–
Appellant.

No. 98–2546.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 18, 1998.

Decided Dec. 14, 1998.

K. Tate Chambers, John H. Campbell (argued), Office of the U.S. Attorney, Peoria, IL, for Plaintiff–Appellee.

Thomas W. Patton (argued), Office of the Federal Public Defender, Springfield, IL, George F. Taseff, Office of the Federal Public Defender, Peoria, IL, for Defendant–Appellant.

Before BAUER, ESCHBACH and KANNE, Circuit Judges.

PER CURIAM.

A jury found Charles Alexander guilty of violating 18 U.S.C. § 922(g), knowing possession of a firearm that traveled in interstate commerce by a convicted felon. The district court denied Alexander's motion for a new trial and sentenced him to 87 months imprisonment followed by three years supervised release. On appeal, Alexander argues that the district court committed reversible error when it answered a jury note by giving a supplemental instruction that defined constructive possession. Alexander also argues that the prosecutor improperly vouched for government witnesses during closing arguments. We affirm.

At trial, Peoria Police Department Officers Loren Marion and Jeff Wilson testified that on July 31, 1997, they were on uniformed patrol in the area of the Taft Homes, a large public housing complex. Around midnight, they received a radio dispatch concerning Alexander. They drove to the location near the Taft Homes and saw Alexander walking north, away from their unmarked squad car. When Wilson exited the car, Alexander turned and began walking towards the officers. Wilson saw Alexander lift up his sweatshirt, revealing a gun stuck in the waistband of his sweatpants. Wilson drew his weapon and ordered Alexander to stop. Alexander fled instead.

Wilson and Marion chased Alexander into the Taft Homes. When Wilson was about five feet away from Alexander, Wilson saw Alexander stop, pivot, and turn towards Wilson while raising both hands over his shoulders, palms open. Wilson saw an object flying through the air, heard a "clunk," and saw a small dust cloud on the ground and then the gun. Wilson recovered the gun, which had five live rounds in the magazine, but no round in the chamber.

The prosecution also called an agent from the Bureau of Alcohol, Tobacco and Firearms, who testified that the gun was manufactured in Germany and had traveled in interstate commerce.

Torey Alexander, the defendant's niece, testified for the defense. She said that she saw Alexander and his friend Robert Cooper walking north on the sidewalk across the street when a drunk white man approached them, shouted a racial slur, and threatened to kill them. The white man fired a gun, and Torey and her friends hid behind a parked car. From behind the car, she saw Cooper run away while Alexander fought with the white man over the gun. Torey then ran away to call her grandmother about the incident.

Alexander testified to the same facts as his niece. However, he added that, while he and the white man were fighting over the gun, it went off a second time, and the white man then ran away. He testified that, afterwards, a female resident from the Taft Homes emerged and asked Alexander what happened. While Alexander was speaking to her, he noticed that the police had arrived and were approaching him. Because he had a marijuana cigarette in his hand, he tore it up and threw it down. When the police told him to "freeze," he immediately put up his hands. On cross-examination, Alexander denied running away from the officers once they stepped out of their vehicle.

The two police officers and Alexander all testified that after his arrest, Alexander voluntarily spoke to the police but denied ever possessing the gun. The parties stipulated that Alexander was a felon at the time of the incident. The parties also stipulated that Cooper would have testified that he was with Alexander on July 30 and July 31, 1997, that he never observed Alexander with a gun, that the white man threatened and shot at

them, and that he ran away when the shot or shots were fired. On rebuttal, a firearms expert who had examined the gun testified that if the gun had been fired in a scuffle—as Alexander claimed—there would have been a round in the chamber.

After the prosecutor argued in closing that the evidence established a scenario inconsistent with Alexander's testimony, the defense responded that the prosecutor had "scripted" a "story line" for the jurors. Defense counsel also reminded the jury that "[i]n cases such as this, we are relying upon human judgment, opinions of good, hardworking people such as Officer Wilson, who claims the events went down in the manner in which he described." On rebuttal, the prosecutor remarked that:

... We finally know what the defense is in this case, don't we? The defense is that Officer Wilson was lying. The defense is that the prosecution is a sham. The defense is that the prosecutors have scripted a story line.

Defense counsel objected. The prosecutor then reviewed the evidence and cautioned the jurors to decide for themselves whether Wilson's police report and testimony were consistent with the other evidence. He then stated: "The government's case is not brought to you, it's not scripted to you by Mr. Murphy and myself. We don't bring these officers in here and suggest what they should testify to." The defense objected on grounds of vouching and the objection was overruled. The prosecutor continued, "We don't bring them in and tell them what—we didn't script out this case. This case was made by good cops on the streets of Peoria." Defense counsel objected again, and asked for a continuing objection. The trial court stated in a sidebar that the defense had invited the remarks.

Later during jury deliberations the jury sent the following question to the judge:

Does the term "know[ing]ly possess" mean the gun must be in the possession of the person at the time of apprehension? [O]r

[d]oes the officer have to see the gun as a gun not just as an object flying [through] the air to be in possession?

Over defense counsel's objection, the district court sent the jury the following modified version of the Eighth Circuit's pattern definition of possession:

A person may have actual possession or constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, is then in constructive possession of it. Whenever the word "possession" is used in these instructions it includes actual as well as constructive possession.

■■■■ We review the trial court's decision to issue a supplemental jury instruction for abuse of discretion. *United States v. Rios–Calderon*, 80 F.3d 194, 197 (7th Cir.1996). When we review a supplemental instruction, we ask "whether (1) the instructions as a whole fairly and adequately treat the issues, (2) the supplemental instruction is a correct statement of the law, and (3) the district court answered the jury's specific question correctly." *Id.* If a supplemental instruction is issued after the jury has started deliberating, thereby technically violating Fed. R.Crim.P. 30,[1] we reverse only where the defendant can show that actual prejudice resulted. *United States v. Gill,* 909 F.2d 274, 279–80 (7th Cir.1990); *United States v. Baker,* 722 F.2d 343, 346 (7th Cir.1983).

■■■■ The district court did not abuse its discretion or unfairly prejudice Alexander because each of the three *Rios–Calderon* factors weigh in favor of the court's decision to give the supplemental instruction. Before the district court issued the supplemental instruction, the jury instructions did not define "possession." Given that the jury had questions about the meaning of "possession," the court would have failed to treat this issue

---

1. Fed.R.Crim.P. 30 provides, in relevant part, that: "[A]ny party may file written requests that the court instruct the jury on the law as set forth in the requests. ... The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. The court may instruct the jury before or after the arguments are completed or at both times."

fairly or adequately if it had not issued a supplemental instruction. *See United States v. Zabic,* 745 F.2d 464, 475 (7th Cir.1984) (citing *Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 90 L.Ed. 350 (1946) for the proposition that the trial court must respond to jurors' questions with concrete accuracy to clarify their points of concern). Second, the defense correctly conceded in its brief and at oral argument that the supplemental instruction correctly defined "possession." *See United States v. Tirrell,* 120 F.3d 670, 675 (7th Cir.1997); *United States v. Kitchen,* 57 F.3d 516, 520 (7th Cir.1995). Third, although the district court could not properly give a direct answer to the jury's fact-specific questions, it provided a correct definition of possession to guide the jury's resolution of the issue.

Alexander argues that he was unfairly prejudiced because he was unable to argue against the "new" constructive possession theory. But, constructive possession was not a new legal theory injected into the case; possession may be of two types, and constructive possession is one of them. Alexander was never entitled to a jury charge that did not define "possession," or that did not define the term completely. *See Baker,* 722 F.2d at 347 (defendant was not unfairly prejudiced when trial court corrected jury instruction, because defendant never was entitled to jury instruction using only the term "embezzle" where indictment charged defendant with aiding and abetting co-conspirator to "embezzle" "abstract" and "purloin" funds). Further, Alexander's theory of the case was that he did not possess the gun at all, actually or constructively. Therefore, his jury argument would not have been different had the supplemental instruction been included in the original charge, and Alexander was not prejudiced by the trial court's decision to issue the supplemental instruction. *Cf. Gill,* 909 F.2d at 280 (where defendant argued that he lacked intent to defraud and that prosecution's witnesses were not credible, he was not prejudiced by supplemental instruction stating that government had to prove a scheme to defraud *or* obtain money rather than scheme to defraud *and* obtain money as provided in the original instruction).

We review for abuse of discretion the denial of the motion for new trial on the grounds of improper vouching. *United States v. Morgan,* 113 F.3d 85, 89 (7th Cir. 1997). When assessing allegations of improper vouching in closing argument, we first consider the prosecutor's remarks in isolation. If the remarks are improper in the abstract, we then review them in the context of the entire record and ask whether they denied the defendant a fair trial. *United States v. Johnson–Dix,* 54 F.3d 1295, 1304 (7th Cir.1995). In this review we evaluate several factors: (1) the nature and seriousness of the statement; (2) whether defense counsel invited it; (3) whether the district court sufficiently instructed the jury to disregard it; (4) whether defense counsel had the opportunity to respond to the improper statement; and (5) whether the weight of the evidence was against the defendant. *Id.*

The prosecutor stated that he and co-counsel did not "script" the case and that the case was made by "good cops" on the streets of Peoria; he made these remarks after reviewing the officers' testimony and Officer Wilson's police report filed after the incident to show that they were consistent. In isolation, it may appear that the prosecutor improperly expressed his opinion that his witnesses were "good cops," but in the context of the entire rebuttal argument and record, the prosecutor suggested a permissible inference. *See, e.g., Morgan,* 113 F.3d at 89 (where one witness's testimony was corroborated by another's, prosecutor's characterization of first as an "honest citizen" was permissible expression of inference arising from evidence rather than improper expression of personal opinion); *United States v. Renteria,* 106 F.3d 765, 766 (7th Cir.1997) (where plea agreements were in evidence, prosecutor was free to invite jury to infer that witnesses had incentive to testify truthfully to get their deals).

The majority of factors pertinent to this context support this conclusion. First, the "good cops" remark was not that serious because the prosecutor made the remark only once, after describing the evidence, and did not couch the remark as personal opinion.

**430**

Second, the remark was invited. The prosecutor suggested a permissible inference from the trial evidence to counter defense counsel's remarks impugning Officer Wilson's credibility. Third, although the district court did not instruct the jury immediately after the prosecutor made the remark, the final jury charge was sufficient to remedy any harm. The trial judge instructed the jury that it was the sole finder of credibility, that it should disregard closing arguments to the extent that they were unsupported by the evidence, and that only evidence received in the case should be considered. *See Morgan,* 113 F.3d at 91 (considering similar final jury instructions as a factor in the government's favor). Fourth, it is true that defense counsel did not have an opportunity to counter the remark through rebuttal, but this is the only factor that favors Alexander. The fifth factor, the weight of the evidence, also favors the government. Defense counsel did not dispute that the gun traveled in interstate commerce, and stipulated that Alexander was a convicted felon. Regarding Alexander's alleged knowing possession of the gun, the firearms expert testified that there would have been a round in the gun's chamber if it had been fired during a scuffle as Alexander claimed. Furthermore, the police officers testified consistently with each other and with the other evidence. In contrast, Alexander testified at trial about a physical confrontation with the white man who shot at him, while Officer Wilson's police report reflected that Alexander previously described a drive-by shooting.

The prosecutor's denial that he and co-counsel "scripted" the case was proper, both in isolation and in the context of the record as a whole. By making the remark, the prosecutor did not improperly put forth an opinion or imply that facts existed that were not before the jury. *See Renteria,* 106 F.3d at 767. The prosecutor instead responded to the defense counsel's accusation. Under the "invited response" doctrine, reversal for such a remark would not be required unless it unfairly prejudiced the defendant. *Johnson–Dix,* 54 F.3d at 1305. Under the five factors, no unfair prejudice to Alexander resulted. The remark was not serious, it was invited by defense counsel, instructions to disregard

it were not required, and the weight of the evidence favored the prosecution. Alexander's lack of opportunity to reply is the only factor that favors him, and it is not sufficient to conclude that his trial was unfair. Accordingly, we AFFIRM.