In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2574

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.
ANDY HE,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CR 963--Ruben Castillo, Judge.

Argued November 9, 2000--Decided April 2, 2001

Before FLAUM, Chief Judge, and RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.  Andy He was charged with encouraging and inducing an alien to enter the United States illegally, in violation of 8 U.S.C. sec.sec. 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i). A jury found him guilty as charged, and the district court sentenced Mr. He to a term of five months of imprisonment, a $3,000 fine and a two-year term of supervised release. Mr. He then appealed his conviction to this court. He argues that a supplemental instruction given by the district court had the effect of constructively amending the indictment. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

I
BACKGROUND
A.  Facts

On December 12, 1999, a Chinese woman arrived at O'Hare International Airport on a flight from Narita, Japan. This woman, later identified as Jin Xing Yang, presented a United States passport in the name of Pik Sze Chan to an Immigration and Naturalization Service ("INS") inspector. The inspector noticed that Yang was unable to speak English and answer his questions, despite the fact that her Customs Declaration form was filled out in English. Given an opportunity to complete a new Customs Declaration form in English, Yang

was unable to do so. INS inspectors later made a closer inspection of the passport that Yang had presented. This inspection revealed that the passport had been doctored--a second lamination had been placed over the original passport's lamination, and a picture of Yang had been inserted between the two layers. The inspectors soon determined that Yang, using the name Pik Sze Chan, had been traveling with Mr. He, as the two were seated next to one another on a flight from Bangkok, Thailand, to Narita and then from Narita to Chicago. Moreover, airline records demonstrated that the one-way airline tickets for Mr. He and Yang's journey to the United States had been purchased together at the Bangkok airport.

Both Yang and Mr. He were then detained by INS inspectors and interviewed separately. Yang claimed that she was traveling alone and denied knowing Mr. He. She carried only a purse with her, which was devoid of any currency, credit cards or flight-related information. The purse did, however, contain a piece of paper with a New York City address and phone number written on it; this same information had been listed as Pik Sze Chan's address and phone number on the Customs Declaration form that Yang had presented at the INS checkpoint.

Meanwhile, Mr. He told inspectors that he had been traveling alone and had only met Yang when he sat next to her on the flight to Chicago. When asked about the slip of paper found in Yang's purse, Mr. He admitted that he had written this information down and given it to Yang and that it referred to the address and phone number of his uncle./1 Mr. He also explained that he had helped Yang fill out her Customs Declaration form. Inspectors then asked Mr. He to empty his pockets; when he did, he produced three boarding passes--two in his own name and one in the name of Pik Sze Chan. Mr. He was also found to be carrying a Chinese passport belonging to Jin Xing Yang, Yang's Chinese identification card with her true name on it, and two airline tickets for Mr. He and Pik Sze Chan to fly from Chicago to New York in adjoining seats on that day.

Other relevant facts regarding this incident were later discovered. The altered passport presented by Yang to the INS inspector had been reported stolen in New York, where Mr. He then lived. Flight records also confirmed that Mr. He and Yang had traveled together on the same flight from China to Hong Kong and then from Hong Kong to Bangkok on December 10, 1999, two days before they were detained in Chicago. Additionally, the two one-way tickets purchased for Mr. He and Yang from Bangkok to New York (via Chicago) on December 12 had cost over $1,800 and were paid

for in cash. A bank receipt found in Mr. He's wallet indicated that he had exchanged an amount of United States currency for Thai currency in the amount of $1,774, slightly less than the cost of those tickets, on the previous day.

Mr. He was later arrested and charged in a one-count indictment with encouraging and inducing an alien to enter the United States illegally, in violation of 8 U.S.C. sec.sec. 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i).

B.  District Court Proceedings

Mr. He's trial commenced on March 13, 2000. At the initial jury instruction conference two days later, before the jury retired to begin deliberations, the district court instructed the jury regarding the elements of the offense as follows:

Title 8, United States Code Section 1324(a)(1)(a) provides any person who encourages or induces an alien to come to, enter, or reside in the United States, knowing, or in reckless disregard of, the fact that such coming to, entry, or residence is or will be in violation of law shall be guilty of an offense against the United States.

To sustain the charge in the indictment, the government must prove the following propositions:

First, that Jin Xing Yang was an alien;

Second, that the defendant encouraged or induced Jin Xing Yang to enter the United States in violation of law;

And, third, that the defendant knew, or was in reckless disregard of, the fact that Jin Xing Yang's entry into the United States would be in violation of the law.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

R.58-3 at 481-82. The jury then began its deliberations.

After less than two hours, the jury sent a request to the court for additional instructions.

The jury's note read as follows:

We need a better definition of encouraged or induced.

Does this differ from aiding and abetting?

[signature of the jury foreperson]

R.36. The prosecution and defense counsel then met with the district court to discuss this note. The Government suggested that the jury be provided with the definitions of "encourage" and "induce" found in Black's Law Dictionary. The district court agreed that these formulations would be helpful and suggested that a response to the jury's request should include a few of the several dictionary definitions listed for both words. Mr. He's attorneys objected, on the ground that the district court's proposed definitions of the two words were overly broad. Additionally, all parties, including the district court, agreed that in order that the jury not be confused in their deliberations, it should be instructed that "aiding and abetting" was a separate legal concept that was not before them in this case.

As a result of this discussion, the court submitted the following supplemental instruction to the jury:

MEMBERS OF THE JURY:

In answer to your specific questions, "encourage" means to knowingly instigate, help or advise. "Induce" means to knowingly bring on or about, to affect, cause or to influence to an act or course of conduct.

The concept of aiding and abetting is not before you in any of the Court's instructions.

Please use the answer in conjunction with all of your instructions in your deliberations.

JUDGE RUBEN CASTILLO

R.37 (emphasis in original). Because one element of the offense required that Mr. He have acted knowingly or in reckless disregard for the fact that Yang's entry into the United States was illegal, the district court included the word "knowingly" in its definitions of "encourage" and "induce."

Shortly after receiving this supplemental instruction, the jury returned its verdict, finding Mr. He guilty as charged. On June 7, 2000, the district court sentenced Mr. He to five months of imprisonment, a $3,000 fine and a two-

year term of supervised release.


II
DISCUSSION

Mr. He contends that the district court's supplemental instruction was erroneous because it relied on a dictionary definition of common English words and impermissibly broadened the scope of the indictment against him. We review the district court's choice of a supplemental jury instruction for abuse of discretion./2 See United States v. Snyder, 189 F.3d 640, 646 (7th Cir. 1999), cert. denied, 527 U.S. 1097 (2000); United States v. Rios-Calderon, 80 F.3d 194, 197 (7th Cir. 1996). We have noted that "[o]nce it is clear that a jury has difficulties concerning the original instructions, reinstruction is appropriate." United States v. Lakich, 23 F.3d 1203, 1208 (7th Cir. 1994) (citation and quotation marks omitted); see also United States v. Sanders, 962 F.2d 660, 677 (7th Cir. 1992). The court's power to reinstruct includes within it the power to reformulate or supplement instructions previously provided to the jury. See Lakich, 23 F.3d at 1208; Sanders, 962 F.2d at 677. In our review of a supplemental jury instruction, "we consider: (1) whether the instructions as a whole fairly and adequately treat the issue; (2) whether the supplemental instruction is a correct statement of the law; and (3) whether the district court answered the jury's specific question correctly." Snyder, 189 F.3d at 646; see also United States v. Alexander, 163 F.3d 426, 428 (7th Cir. 1998) (per curiam).

In this case, we believe the district court in no way abused its discretion in providing the supplemental jury instruction at issue. At the outset, we note that the jury instructions as a whole fairly and adequately treated the issues in this case. The jury had been told that to convict Mr. He of the charges against him, it must find that: (1) Yang was an alien, (2) Mr. He encouraged or induced Yang to enter the United States in violation of the law and (3) Mr. He knew, or was in reckless disregard of, the fact that Yang's entry would violate the law. Mr. He does not argue that this initial statement of the law was incorrect. Thereafter, when the jury communicated that it was uncertain as to the meaning of the terms "encourage" or "induce," it was permissible for the district court to provide it with a definition of those terms. In similar situations, when a jury has asked for a definition of a key term after deliberations have begun, we have noted that "the court would have failed to treat [the] issue fairly or adequately if it had not issued a supplemental instruction."

Alexander, 163 F.3d at 428-29; see also Snyder, 189 F.3d at 646 (finding that the court's providing of the dictionary definition of the term "sale" to include the term "trade" was proper, after the jury sent the judge a note asking whether trading was considered selling); United States v. Romero, 57 F.3d 565, 573 (7th Cir. 1995) (supplemental instruction responding to jurors' request for definition of "possess" was proper, where it accurately stated the law and where district court "took pains to avoid highlighting the instruction by reminding the jury that it 'shouldn't make [its] determination based on what one instruction says'")./3

Moreover, the district court took great pains to ensure that the supplemental instruction was understood by the jury in the larger context of the prerequisites for conviction under the statute. Because 8 U.S.C. sec. 1324(a)(1)(A)(iv) requires that Mr. He acted knowingly or in reckless disregard of the fact that Yang's entry into the United States was illegal, the district court inserted the word "knowingly" before the definitions provided for "encourage" and "induce." Additionally, to ensure that the jury considered not only the meaning of the words defined in the supplemental instruction, but also the other elements of the crime, the district court added that the jury should "use the [supplemental instruction] in conjunction with all of [its] instructions in [the] deliberations." R.37 (emphasis in original). These precautions also help to establish that the jury instructions as a whole were a fair and adequate treatment of the issues in this case.

The supplemental instruction was a correct statement of the law. Mr. He points to no authority suggesting that the synonyms provided by the district court in the supplemental instruction are not proper definitions for the terms "encourage" and "induce" generally or that they inappropriately distort their meanings under the statute. These definitions were taken directly from Black's Law Dictionary/4 and conform to other dictionary definitions of those words. See, e.g., Merriam Webster's Collegiate Dictionary 381 (10th ed. 1996) (defining "encourage" as "to inspire with courage, spirit, or hope . . . to spur on . . . to give help or patronage to"), id. at 594 (defining "induce" to mean "to move by persuasion or influence . . . to call forth or bring about by influence or stimulation . . . to cause the formation of"); American Heritage Dictionary 657 (2d ed. 1985) (defining "induce" as "[t]o lead or move by influence or persuasion . . . [t]o bring about the occurrence of; cause")./5 Moreover, we also note that Mr. He apparently did not find fault

with the general practice of providing the jury with explanatory definitions of statutory terms. In its initial instructions to the jury, the district court defined the statutory terms "alien," "knowingly," and "reckless disregard," definitions to which Mr. He raised no objection.

Mr. He argues that as a result of the supplemental instruction, the jury might have thought that it could convict him for "merely influencing, or somehow affecting [Yang's] entry," so that the fact that "Mr. He translated some unspecified language for Ms. Yang could be interpreted by the jury to satisfy the inducing element." Appellant's Br. at 11, 13. This argument fails to take into account the effect of the initial jury instructions that set forth all of the elements that must be found to find Mr. He guilty of violating the statute and all the safeguards that the district court inserted in the supplemental instruction. Read in the context of all the instructions, the definitions included in the supplemental instruction made clear, for example, that for Mr. He to have "induced" Yang's entry under the meaning of the law, he had to "influence" or "affect" her to come to, enter or reside in the United States. It would also have been clear that Mr. He must have known, or have acted in reckless disregard of, the fact that Yang's coming to, entry or residence in the United States was in violation of the law. As a result, the instructions, read as a whole, could not have led the jury to believe that it could find Mr. He guilty if, as he claimed, he simply met Yang on the trip to Chicago and innocuously helped her to translate some information during the flight.

The district court answered the jury's specific question correctly. The jury required more information regarding the meaning of the terms "encourage" and "induce," and the district court provided an accurate dictionary definition of those terms to assist the jury. The district court has broad discretion in determining how best to respond to such a question; if the answer was adequately provided in previous instructions, the court might choose simply to refer the jury back to those instructions for guidance. See United States v. Span, 170 F.3d 798, 802 (7th Cir.), cert. denied, 528 U.S. 862 (1999). In this case, however, the court believed that to address effectively the jury's request for a "better definition" of the two terms, R.36, it needed to provide a supplemental instruction including words defining those terms. As we have on other occasions, we hold that this use of a definition is an appropriate answer to the jury's specific question regarding the meaning of a key term in its deliberations. See Snyder, 189 F.3d at 646;

Alexander, 163 F.3d at 429; Romero, 57 F.3d at 573.

In light of our conclusion that the supplemental instruction given by the district court accurately stated the law, Mr. He's claim that the instruction constructively amended the indictment against him must also fail. An indictment is constructively amended, in violation of the Fifth Amendment, "when . . . the court (usually through its instructions to the jury) . . . broadens the possible bases for conviction beyond those presented by the grand jury." United States v. Cusimano, 148 F.3d 824, 829 (7th Cir. 1998) (citation and quotation marks omitted). However, we have often noted that "not every variation from the verbiage of the indictment, either in terms of proof or jury instructions, constitutes a constructive amendment." United States v. Baker, 227 F.3d 955, 960 (7th Cir. 2000), cert. denied, 121 S. Ct. 1095 (2001); see also United States v. Pigee, 197 F.3d 879, 886 (7th Cir. 1999), cert. denied, Webb v. United States, 529 U.S. 1044 (2000), cert. denied, Lipscomb v. United States, 120 S. Ct. 2735 (2000); United States v. Willoughby, 27 F.3d 263, 266 (7th Cir. 1994). To constructively amend an indictment, the jury instructions must go "'beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury.'" Baker, 227 F.3d at 960 (quoting Pigee, 197 F.3d at 886).

The indictment against Mr. He charged that he "did encourage and induce an alien, specifically a citizen of China, to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence was and would be in violation of law." R.12. The district court's definitions of "encourage" and "induce" in the supplemental instructions did not alter the essential meaning of those words, and the jury instructions as a whole track the statutory prerequisites of 8 U.S.C. sec. 1324(a)(1)(A)(iv), which were set out in the indictment. Therefore, the supplemental jury instructions did not constructively amend the indictment against Mr. He.

Conclusion

The Supreme Court has noted that "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." Bollenbach v. United States, 326 U.S. 607, 612-13 (1946). We believe the district court fulfilled its responsibilities in this regard. It certainly did not abuse its discretion in fashioning the supplemental jury instruction. Therefore, the

judgment of the district court is affirmed.
AFFIRMED


/1 Authorities later discovered that the address correlated with the former address of Mr. He's brother, not that of his uncle. Additionally, the Customs Declaration form that Mr. He had filled out for himself was later found to contain an incorrect address.

/2 The Government argues that we should review this issue for plain error because Mr. He failed to raise below the argument that the district court's additional definitions for the terms "encourage" and "induce" constructively amended the indictment. The Government notes that Mr. He's attorneys objected to the use of these definitions as being "far too broad." The Government points out, however, that when the attorneys argued to the court that the supplemental instruction "might actually lead to a material change in the indictment," R.58-3 at 488, they were referring only to language regarding the applicability of the term "aiding and abetting," not to the proposed definitions for "encourage" or "induce." Therefore, because Mr. He did not specifically argue that the definitions for "encourage" and "induce" would themselves constructively amend the indictment, the Government asserts that Mr. He has waived that objection on appeal. We need not determine whether such waiver occurred, however, due to our determination that the district court's supplemental instruction was proper under any standard of review.

/3 Mr. He suggests that we should find the supplemental instruction in error for the same reason that we have consistently admonished district courts not to attempt to define the term "reasonable doubt." See, e.g., United States v. Blackburn, 992 F.2d 666, 668 (7th Cir. 1993); United States v. Bardsley, 884 F.2d 1024, 1029 (7th Cir. 1989); United States v. Glass, 846 F.2d 386, 387 (7th Cir. 1988). However, we have taken this approach regarding the concept of reasonable doubt due to the well-noted difficulties created by attempts to find a precise definition for that standard of proof. See, e.g., Gacy v. Welborn, 994 F.2d 305, 312 (7th Cir. 1993) (noting that "[b]urdens of proof and persuasion are hard to explain"); Blackburn, 992 F.2d at 668 (noting that definitions of reasonable doubt have a likelihood of "confus[ing] juries more than the simple words themselves"); United States v. Hall, 854 F.2d 1036, 1039 (7th Cir. 1988) ("An attempt to define reasonable doubt presents a risk without any real benefit."); Glass, 846 F.2d at 387 (explaining that "[a]ttempts to explain the

term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury") (citation and quotation marks omitted). However, where, as here, a definition of a statutory term can provide jurors with helpful information that does not alter the statutory requirements for conviction, the giving of such a definition is in no way precluded.

/4 The entire definition provided by Black's Law Dictionary for "encourage" is as follows: "In criminal law, to instigate; to incite to action; to give courage to; to inspirit; to embolden; to raise confidence; to make confident; to help; to forward; to advise." Black's Law Dictionary 527 (6th ed. 1990). The entire definition given for "induce" is: "To bring on or about, to affect, cause, to influence to an act or course of conduct, lead by persuasion or reasoning, incite by motives, prevail on." Id. at 775.

/5 Additionally, in different contexts, we have noted approvingly definitions of the term "induce" that were similar to the definition chosen by the district court. See, e.g., Drobny v. Commissioner, 113 F.3d 670, 678 (7th Cir. 1997) (defining "induce" as "'to lead or move by influence or persuasion,' 'to bring about the occurrence of; cause'") (quoting American Heritage Dictionary 657 (2d ed. 1982)); United States v. Smith, 253 F.2d 95, 98 (7th Cir. 1958) (defining "induce" as "to lead on; to influence; to prevail on; to move by persuasion or influence") (citing Webster's New International Dictionary (2d ed. 1958)).