BARKETT, Circuit Judge,
concurring in part and dissenting in part:
While I concur with the majority that the district court did not err in instructing the jury that there is no temporal requirement in 8 U.S.C. § 1327, I dissent because I believe the district court’s supplemental instruction on 8 U.S.C. § 1324(a)(l)(A)(iv) is per se reversible error. By defining “encourage” so generally to mean “help,” the district court rendered at least one other statutory subsection superfluous and also constructively amended the indictment.
Jose Lopez drove the boat in which seventeen aliens were being smuggled into the United States. This conduct appears to violate another provision of the same statute, 8 U.S.C. § 1324(a)(2), which prohibits the knowing transportation of an alien who has not received prior official authorization to enter the United States. However, Lopez was not charged with violating this subsection. Rather, he was charged with violating § 1324(a)(l)(A)(iv), which prohibits the “encouragement” or “inducement” of an alien to come to the United States with the knowledge or reckless disregard of the fact that the alien’s entry into the United States is in violation of the law.
The majority’s decision eschews the ordinary and common sense meaning of the word “encourage” in favor of the most general and least meaningful possible in *1259 terpretation, namely, “to help.” The majority reasons that one form of “help” is mere transportation. The majority’s interpretation thus criminalizes not, as it suggests, two aspects of the same conduct but rather the same aspect of the same conduct. That is, if “encourage” as applied to bringing aliens into the United States subsection (a)(1) means “help” and “help” includes transportation, then subsection (a)(2) (transportation) must likewise means exactly the same thing as subsection (a)(1) (“encouraging” or “inducing” — or, in the majority’s terms, “helping” an illegal entry). But surely “encouragement” or “inducement” under (a)(1) must criminalize something different than mere transportation, otherwise (a)(2) would be redundant. “A basic premise of statutory construction is that a statute is to be interpreted so that no words shall be discarded as being meaningless, redundant, or mere surplus-age.” United States v. Canals-Jimenez, 943 F.2d 1284, 1287 (11th Cir.1991).
Reading the statute as a whole — with “encouragement” or “inducement” in context — demonstrates that “encourage” must be read to mean something more than mere “help” in order to avoid rendering (a)(2) redundant.[1] See United States v. Murrell, 368 F.3d 1283, 1287 (11th Cir.2004) (disfavoring interpretation of “induce” as synonymous with “persuade” because to do otherwise would render other portions of the statute superfluous). The majority’s expansive interpretation of “encourage” most clearly renders subsection (a)(2) — -transportation of an alien into the United States — superfluous but the problem applies more broadly as well.
The ordinary and common sense meaning of “encourage” implies an affirmative act that serves as a catalyst or trigger that drives, motivates, or spurs another individual to embark on a course of action that he might not have otherwise. Indeed, dictionaries define “encourage” as “[t]o instigate; to incite to action; to give courage to; to inspirit; to embolden; to raise confidence; to make confident; to help; to forward; to advise.” Black’s Law Dictionary 620 (4th ed. 1968); see also Black’s Law Dictionary 568 (8th ed. 2004) (defining “encourage” as “[t]o instigate; to incite to action; to embolden; to help”); Webster’s Third New Int’l Dictionary 747 (1993) (defining “encourage” as “to give courage to; inspire with courage, spirit, or hope; to spur on; to give help or patronage to.”). “Help” is the least preferred definition for “encourage.” It appears last (or towards the end of the list) and, unlike the more preferred meanings of “encourage,” “help” is vague and provides the least descriptive context for the meaning of “encourage.”
Applying the ordinary and most preferred meanings of “encourage” (i.e. not *1260 “help”), there is no evidence that Lopez incited the aliens to action or even spoke to or otherwise communicated with them prior to or during the voyage. He did not “encourage” or “induce” them to come. By no stretch of the facts did Lopez’s mere act of driving the boat “instigate” or “incite to action” the passengers, who had already decided to illegally enter the United States before they met him and had undertaken the journey.[2] A taxi driver who takes a passenger to the address supplied by the passenger has engaged in different conduct than a taxi driver who approaches a potential passenger on the street and touts a specific tourist attraction urging the potential passenger to let the taxi driver take him there. In the former scenario, the taxi driver has merely transported the passenger. In the latter, the taxi driver has “encouraged” or “induced” that passenger to go to a specific destination.
Under the facts of this case, the government chose the wrong statutory provision under which to prosecute Lopez and then attempted to cure this defect by broadening the basis of the indictment by defining “encourage” in a way that swallows the other subsections.[3] The majority tries to explain the government’s mistake by asserting that when an act violates more *1261 than one criminal statute, the government may decide upon which statutory provision it will base its prosecution, and that the same conduct may violate more than one statutory provision. These legal principles are not in dispute. What I take issue with is that the majority’s interpretation of the statute, when applied in the context of transportation, renders two statutory provisions coterminous. The majority’s adoption of “help” as a definition of “encourage” is problematic for any of the subsections that have transportation as an element. This is because mere transportation is a form of “help” (as are many types of conduct given the broad-based meaning of the word “help”) which the majority now claims is synonymous with “encouragement.” But as I stated earlier, encouragement must mean more than mere transportation.
However, the government’s error does not change the fact that the undisputed evidence is that Lopez followed CarnetCastro and Monge’s directions regarding where to drive the boat. There is no evidence that Lopez ever approached or communicated with the aliens prior to or even during the voyage. The jury recognized the inherent and critical difference between encouragement or inducement and mere transportation when it sent its note to the district judge, asking whether Lopez had to communicate with the aliens either “orally or by gesture” in order to be convicted of “encouraging” or “inducing” them.[4] To give the supplemental instruction defining “encourage” as “help” in response was erroneous.

. The majority’s cited support for its position is not persuasive. See United States v. Ndiaye, 434 F.3d 1270 (11th Cir.2006); United States v. Kuku, 129 F.3d 1435 (11th Cir.1997). Ndiaye and Kuku did not present the possibility that those defendants, who were charged with "encouraging” aliens to reside or remain in the United States, could be convicted of the separate but uncharged crime of transporting an alien into the United States because those cases involved aliens who were already present in the United States. Further, United States v. Hanna is inapposite because while the defendant in Hanna drove the boat like Lopez, he also planned the smuggling and made preparations for the journey. 639 F.2d 192, 193 (5th Cir. Unit B 1980). In Hanna, the defendant was the captain of the boat; had been employed specifically to take the boat to Miami; assisted the aliens in boarding the boat; left the boat in a smaller boat to go to an island to procure food and water for the aliens during the twelve-day boat trip from Haiti; instructed the aliens to use the alibi that he had concocted for them; and used that same alibi with the police. Id.

. The majority relies heavily on Carnet-Castro's testimony that Lopez (1) had made a previous smuggling trip with him; (2) knew that this trip was a smuggling one; (3) intended to share the proceeds with Carnet-Castro; (4) drove the boat to the abandoned hotel where the aliens boarded; and (5) lied to Coast Guard officials when he was initially stopped. What is notable about the majority's characterization of the facts is that they do not address Lopez’s interactions with the aliens themselves. When Lopez drove the boat to the abandoned hotel where the aliens boarded, the aliens had already formed their intent to board the boat and to enter the United States illegally. Lopez was not a catalyst for their intent to come to or enter the United States nor did his actions "incite to action” the aliens. Rather, their intention to enter the United States illegally was already formed prior to their embarkation, which itself was not brought about by Lopez’s actions. Accordingly, Lopez’s pilotage of the boat was nothing more than mere transportation of the aliens.

. The government's failure to draft a comprehensive indictment or its failure to present evidence in support of the indicted charge cannot justify the constructive amendment of the indictment. This Court takes seriously the constitutional mandate that charges must be presented to a grand jury for an indictment to issue and that any conviction is based upon evidence supporting those charges only — and no others. This Court strictly construes charges contained in an indictment and holds both district courts and the government accountable for jury instructions and evidence that do not support the charged offense. See United States v. Narog, 372 F.3d 1243, 1248-50 (11th Cir.2004) (holding that district court’s supplemental jury instruction that the government need only prove that the defendant knew he was manufacturing a controlled substance constructively amended the indictment because indictment charged that defendant knew he was manufacturing methamphetamine and government’s evidence supported methamphetamine production only).
As the Supreme Court has emphasized, after an indictment has been returned, its charges may be broadened only by the grand jury itself. Stirone v. United States, 361 U.S. 212, 215-16, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). This is because
if it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner’s trial for a crime, and without which the constitution says "no person shall be held to answer,” may be frittered away until its value is almost destroyed.
Ex parte Bain, 121 U.S. 1, 10, 7 S.Ct. 781, 30 L.Ed. 849 (1887).

. The majority's reliance on United States v. He, 245 F.3d 954 (7th Cir.2001) is misplaced as He is distinguishable in several material respects. Most importantly for our purposes, the continuing viability of He is questionable in light of the Supreme Court's recent decision in Santos. The Seventh Circuit decided He seven years prior to the Supreme Court’s decision in Santos and thus the Seventh Circuit’s analysis, which focuses almost exclusively on the dictionary definitions to the exclusion of any holistic analysis of the statute, is lacking under the prescribed method of interpretation that now is binding on it and this Circuit. Second, as a decision of our sister circuit, He is not binding on this Court and is, at best, persuasive. Third, in He, the argument that the supplemental instruction provided an improper definition of "encourage” as it renders other statutory provisions redundant was not advanced before the district court or the Seventh Circuit. 245 F.3d at 959. By contrast, in this case, it was vigorously argued by defense counsel before the district court and before this Court. Thus, the precise question before this Court was never before the Seventh Circuit and, as such, the resolution of it did not form the basis for the He decision. More to the point, the jury in He explicitly requested a "better definition” of the undefined statutory terms, 245 F.3d at 957, while in Lopez’s case, the jury did not request any definition of the undefined statutory term. Finally, the defendant in He also provided much more than mere transportation while Lopez was merely the pilot of the boat in this case.